No. 14279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

FIRST SECURITY BANK OF BOZEMAN, a
Montana Banking Corporation,

      Plaintiff and Respondent,

  -vs-

JOHN M. GODDARD and CLEO C. GODDARD,

      Defendants and Third Party Plaintiffs,

  -vs-

BANKERS UNION LIFE INSURANCE COMPANY,

      Third Party Defendant and Appellant.

---

Appeal from:  District Court of the Eighteenth Judicial
           District,
           Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

    For Appellant:

        Bolinger and Wellcome, Bozeman, Montana
        Roy Andes  argued, Bozeman, Montana

    For Respondents:

        William Douglas argued, Libby, Montana
        Landoe, Brown, Planalp, Kommers & Lineberger,
        Bozeman, Montana
        James M. Kommers argued, Bozeman, Montana

---

                Submitted:  February 2, 1979

                Decided:  APR 2 5 1979

Filed:  APR 2 5 1979

*Thomas J. Kearney*   Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by third party defendant, Bankers Union Life Insurance Co. (BULIC) from a judgment in the District Court, Eighteenth Judicial District, Gallatin County, finding BULIC liable on a policy of credit disability insurance issued by it to John M. and Cleo C. Goddard, third party respondents. The District Court sitting without a jury found BULIC liable to Goddard for disability benefits in the amount of $4,227.95, and further liable to Goddard for exemplary damages in the sum of $5,000.00.

We affirm the District Court for the reasons following. First Security Bank of Bozeman is a Montana banking corporation operating in Bozeman, Montana. In the conduct of its ordinary business, the bank acted as an agent for BULIC, whereby the bank issued credit life and disability insurance policies for BULIC to insure payment of monies owing to the bank in case of the untimely demise or disability of the borrower.

On October 2, 1975, an officer of the bank prepared a note and security agreement for execution by the Goddards and on that same date mailed the instruments to the Goddards in Libby, Montana. The face amount of the note was $5,529.96, which sum included a premium of $248.84, financed by the bank and payable to BULIC, for credit life and credit disability insurance for the Goddards.

The Goddards received the instruments by mail on either October 4 or 5, 1975, and upon receipt of them, the Goddards

executed the instruments, and placed them in the mail, with postage prepaid, addressed to the bank. The bank physically received the instruments on October 7, 1975.

A written application by the Goddards for disability insurance is not a part of the appellate record, but in the District Court, the parties stipulated that an application for disability insurance was made by the Goddards to BULIC contemporaneously with the execution of the note and security instrument. Thereafter, it is stipulated, the insurance company accepted the application for disability insurance on October 7, 1975 and issued its policy no. 848208, providing such insurance to the Goddards.

The Goddard note of October 2, 1975 to the bank was a renewal note covering a prior existing note indebtedness from Goddard. All interest on the preexisting note was computed up to and including October 1, 1975 and stopped on that date. The interest on the renewal note commenced on October 2, 1975.

On October 5, 1975, John M. Goddard experienced some physical discomfort, which he initially attributed to some minor flu or other minor malady, for which he felt rest and aspirin would provide a cure. The discomfort however grew in intensity so that on October 7, 1975, Goddard went to Dr. William T. Matthews of Libby for examination. Dr. Matthews diagnosed the condition of Goddard at that time to be one of "coronary disease" which totally disabled Goddard until June 1, 1976.

The credit insurance policy contained, under the heading "Exceptions," the following language:

". . . No benefits shall be payable under the
Disability portion of this policy, listed
in section E if Total Disability is caused
by, or results from: . . . (3) A pre-
existing illness, disease or physical
condition which manifested themselves
to the insured debtor by requiring medical
diagnosis or treatment, or would have caused
a reasonably prudent person to have sought
medical diagnosis or treatment within six
months preceding the taking of the application
for insurance and which caused loss within
the six months following effective date of
the insurance policy, provided, however, that
disability commencing thereafter resulting
from such conditions shall be covered, . . ."

Policy no. 848208, issued by BULIC had an effective date of October 7, 1975, a termination date of October 7, 1978, and provided a monthly indemnity for disability in the sum of $153.61 with benefits payable from the 31st day of total disability to the beneficiary, First Security Bank of Bozeman.

Goddard made written claim to BULIC for disability benefits on November 5, 1975. In his statement of claim, he indicated he had last worked on October 5, 1975, and that he had been continuously disabled from that date.

Dr. Matthews' written report to the insurance company states that Goddard ceased work because of disability on October 5, 1975.

Goddards made no payments on the note indebtedness to the bank after October 2, 1975. They repeatedly demanded BULIC make such payments out of the credit disability insurance policy, but BULIC refused. The court found that as a direct result thereof the bank declared a default by the Goddards in the payment of the note indebtedness. In January 1976, the bank accelerated the payments due under the note, repossessed the Goddards vehicle and sold it at a distress sale. On February 2, 1976, the bank filed this action in the District Court against the Goddards to collect a deficiency

from the Goddards in the amount of $2,452.95, plus interest, attorney fees and costs. Goddards appeared in the action, and brought a third party complaint against BULIC for the insurance coverage, and for punitive damages for refusing to pay the Goddard claim. As we indicated, the District Court entered judgment in favor of Goddards against BULIC, and separately entered judgment in favor of the bank against Goddards for the deficiency amount due on the note, plus attorney fees. No appeal is taken from the bank judgment against Goddards.

The several issues presented by appellant can be resolved by the answers to the following questions:

(1)  What is the effective date of the disability insurance provided by BULIC?

(2)  What is the date of onset of Goddards' disability?

(3)  Is Goddard estopped to deny disability beginning at an earlier date, based on a misrepresentation?

(4)  Should the court have limited Goddards damages to the amount due on the obligation?

(5)  Should consequential damages have been awarded in this case?

(6)  Are exemplary damages in this case proper and if so, are they supported in the evidence?

EFFECTIVE DATE OF DISABILITY INSURANCE

BULIC's contention on this point is that since the insurance policy was issued effective October 7, 1975, and since it is clear that Goddards' disability began on October 5, 1975, his disability preexisted the insurance date on the policy and the claim for disability is thereby excluded.

This contention requires consideration of the provisions of section 40-4207, R.C.M. 1947, now section 33-21-203 MCA, which provides in part:

-5-

"The term of any credit life insurance
or credit disability insurance shall,
subject to acceptance by the insurer,
commence on the date when the debtor
becomes obligated to the creditor . . ."
(Emphasis added.)

There is no question that the insurance company accepted the risk on October 7, 1975. BULIC contends however that Goddard could not have become obligated to the bank until October 7, 1975, because the note and security agreement from Goddard was not received by the bank until October 7, 1975; and because on that date, the bank, having received the note, cancelled the previous note and its indebtedness, and then in fact accepted the new obligation.

BULIC further contends that on October 4 or 5, when Goddard signed and mailed the note, he was not "obligated" upon the note. BULIC bottoms this contention upon an examination of the Uniform Commercial Code provisions, relating to the rights of the bank. BULIC contends that the bank as a holder under section 87A-3-301, R.C.M. 1947, now section 30-3-301 MCA, or as a holder in due course under section 87A-3-305, R.C.M. 1947, now section 30-3-305 MCA, could not enforce the note because a "holder" is defined in section 87A-1-201(20), R.C.M. 1947, now section 30-1-201(20) MCA, as one in possession of the note. Section 87A-1-201(20), R.C.M. 1947, now section 30-1-201(20) MCA, identifies a holder as:

". . . a person who is in possession of
. . . an instrument . . . drawn, issued or
endorsed to him or to his order  or to
bearer or in blank."

It is BULIC's contention that since the bank was not in possession of the note until October 7, 1975, it could not enforce the note before that date under section 87A-3-301, R.C.M. 1947. or section 87A-3-305, and BULIC claims that Goddard cannot be said to have become "obligated" on the note until October 7.

This contention of BULIC goes against the grain of the legislative intent that is evidenced in the statutes relating to credit life and disability insurance. We have quoted previously the provisions of section 40-4207, which fixes the beginning term of credit disability insurance. In addition, section 40-4209, R.C.M. 1947, now section 33-21-204(2) MCA, relating to the delivery of the policy provides that if the policy is not delivered at the time the indebtedness is incurred, an application shall be taken from the debtor. The provisions of section 40-4209, with respect to the application require that:

> ". . . The application or notice of proposed insurance shall state that, upon acceptance by the insurer, the insurance shall become effective as of the date the indebtedness is incurred." (Emphasis added.)

Such statutory provisions are as much a part of the credit disability insurance policy as though they were written therein. McIntosh et al. v. Hartford Fire Insurance Company (1938), 106 Mont. 434, 78 P.2d 82; Lee v. Providence Washington Insurance Company (1928), 82 Mont. 264, 266 P. 640.

The District Court took the position that the Goddards became obligated to the bank on the date that they signed the note in Libby and mailed it to the bank. We hold this position to be correct. Under section 55-216, R.C.M. 1947, (since repealed) every contract on a negotiable instrument was deemed incomplete and revocable until delivery of the instrument had been accomplished, especially as regards a remote party.

Under the Uniform Commercial Code appears that nondelivery is no defense as to a holder in due course (section 87A-3-305, R.C.M. 1947), but is a defense as to one not a holder

-7-

in due course.  (Section 87A-3-306, R.C.M. 1947.)  With

respect to the liability of a maker of a negotiable instrument,

section 87A-3-413, R.C.M. 1947, now section 30-3-413 MCA

provides in part:

> "(1) The maker or acceptor engages that he
> will pay the instrument according to . . .
> its tenor at the time of his engagement."
> (Emphasis added.)

When is the "time of his engagement" at which a maker

of a promissory note becomes liable?  Surely it is when he

issues and delivers the promissory note.  Under section 87A-

3-102(1)(a), R.C.M. 1947, now section 30-3-102(1)(a) MCA, he

issues the instrument upon the first delivery thereof to a

holder.  Under section 87A-1-201(14), now section 30-1-

201(14) MCA, the maker accomplishes delivery of the instrument

when he voluntarily transfers its possession.  Negotiable

instruments have no validity until delivered.  This is still

true under the UCC.  Rex Smith Propane, Inc. v. National

Bank of Commerce (U.S.D.C. Texas 1974), 372 F.Supp. 499.

> "A note takes effect from the time of
> its delivery and not from its date.  Until
> the maker of the note parts with the
> possession and control of the instrument,
> he may cancel it or dispose of it as
> he pleases and a note is not executed until
> it is delivered . . ."

> "When the note and trust deed were so deposited
> [in the mail] . . . the maker, parted with the
> possession of and lost control over the papers
> and all right to retake or reclaim them.  Under
> such circumstances, the delivery was complete
> . . ."  Birrer v. Beckler (Ill. 1914), 106
> N.E. 206.  See also:  Investors Commercial
> Corporated v. Metcalf (Ill. 1957), 140 N.E.2d
> 924.

Thus, the promissory note was deemed delivered at the

time it was mailed to the bank.  The note thereupon became the

property of the payee when it was posted to the bank.   It

was beyond the control of the makers at that time.   The

time of mailing therefore became the "time of his engagement"

under section 87A-3-413, now section 30-3-413 MCA fixing the liability of the maker. It was at that time that Goddard became obligated to the creditor under the terms of section 40-4209, R.C.M. 1947, now section 33-21-204(2) MCA.

DATE OF ONSET OF GODDARDS DISABILITY

The District Court found that at the time Goddard mailed the promissory note to the bank there was not existing such illness, disease or physical condition for which he had a medical diagnosis of a totally and permanently disabling nature, or which would have caused a reasonably prudent person to have sought diagnosis or treatment. That finding is a negation of the conditions which would exclude coverage under the BULIC policy.

Under Rule 52(a), Mont.R.Civ.P., findings of fact made by the District Court shall not be set aside unless clearly erroneous, and due regard is to be given to the opportunity of the trial court to judge the credibility of the witnesses.

Here the evidence is that the date of mailing of the promissory note was on October 4 or 5, 1975; that the onset of Goddards discomfort did not occur until October 5; and that he did not go to a medical doctor until October 7, 1975. In fact the evidence is uncontroverted. Since the District Court accepted the credibility of the Goddards with respect to these matters, and nothing in the record makes such evidence inherently incredible, there is substantial evidence to support the findings of the court. See Arrowhead, Inc. v. Safeway Stores, Inc. (1978), ____ Mont. _____, 587 P.2d 411, 35 St.Rep. 1830, and cases cited therein.

## ESTOPPEL BY VIRTUE OF MISREPRESENTATION

Under this contention, BULIC argues that Goddard misinformed the insurance company as to the date of the beginning of his disability and is therefore estopped to claim any other date of onset. Goddards statement of claim to BULIC indicated that he was totally disabled on October 5, 1975 and was his last day of work. He was examined by Dr. Matthews on October 7, and in Dr. Matthews' report, it is stated that Goddard was totally disabled from October 5. Goddard testified that he asked Dr. Matthews to "backdate" the onset of his disability. When he was testifying however, he stated that he worked until October 7, 1975. BULIC claims that the initial statement that his disability began on October 5, 1975 is fraudulent and by virtue thereof Goddard is estopped from claiming any other time of disability.

The District Court found that Goddard's coronary disease was diagnosed on October 7, 1975.

The elements of equitable estoppel (section 93-1301-6, R.C.M. 1947, now section 26-1-601 MCA) which BULIC claims apply here include the contention that BULIC denied Goddard's claims because of his representation that the disability began on October 5, 1975, and that BULIC returned his premium based upon such representation. What this argument of BULIC disregards is that it denied the claim because of its mistaken impression that the effective date of the insurance was October 7, 1975. BULIC had mistakenly concluded that the obligation was not incurred as far as Goddard was concerned until the bank had actual physical possession of the note and security instrument and issued the insurance policy. As we have demonstrated above under the first issue, this is not the law. Therefore the representation by Goddard, if

false, was not material to the risk assumed by BULIC under its insurance policy. It requires a material misrepresentation by an applicant relied on by the insurer to avoid coverage under an insurance policy. See section 40-3713, R.C.M. 1947, now section 33-15-403 MCA. It was not the representation by Goddard that his disability commenced on October 5, 1975 that caused BULIC to change his position for the worse; rather, it was BULIC's mistaken position that October 7 was the date when Goddard became obligated to the bank that caused it to deny coverage. Estoppel has reference to the conduct of the person estopped. Bagley v. Hotel Florence Company (1974), 165 Mont. 145, 526 P.2d 1372. Estoppel has no application where the omissions of the party claiming estoppel brought about the problem.

THE PROPER MEASURE OF DAMAGES AND CONSEQUENTIAL DAMAGES

Under these issues, BULIC claims that the amount of damages awarded by the District Court, $4,227.95, was excessive.

BULIC contends that the insurance contract was an agreement for payment of money only and therefore the proper measure for damages for a breach of the agreement is section 17-303 R.C.M. 1947, now section 27-1-312 MCA, which provides:

"The detriment caused by the breach of an
obligation to pay money only is deemed
to be the amount due by the terms of
the obligation with interest thereon."

BULIC further contends that under the Insurance Code, section 40-4206(2), R.C.M. 1947, now section 33-21-202 MCA, states that the amount payable under a credit disability insurance plan shall equal the aggregate of the periodic unpaid scheduled installments "in the event of disability". Since Goddard was disabled for seven months, BULIC contends the maximum statutory benefit payable will be seven times $153.61, which equals $1,075.27. Any amount in excess of that for direct damages BULIC contends is improper.

-11-

Moreover, BULIC also contends that Goddard is not entitled to consequential damages and that the only amounts which the court may properly award over the seven unpaid installments is such interest as may be found due. Goddard answers this issue claiming that section 17-301, R.C.M. 1947, now section 27-1-311 MCA is applicable and that Goddard is entitled to receive "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby." Goddard further contends that section 17-303 is intended only as a guide to the estimation of damages under the cases of Zook Brothers Construction Company v. State of Montana (1976), _____ Mont. _____, 556 P.2d 911, 33 St.Rep. 809; Wyatt v. School District No. 104 (1966), 148 Mont. 83, 417 P.2d 221; and Orford v. Topp (1959), 136 Mont. 227, 346 P.2d 566. Goddard also relies on Wiseman v. Holt (1973), 163 Mont. 387, 517 P.2d 711, but this case was overruled in Whitney v. Bails (1977), _____ Mont. _____, 560 P.2d 1344, 34 St.Rep. 134.

Neither of the positions taken by the opposing parties here quite hits the mark as to the proper measure of damages recoverable in such a case as the one at bar.

Under the pleadings of the parties, and the findings of the court, the claim of Goddard is one sounding in tort involving a breach of contract. In their third party complaint, Goddards allege that BULIC "wrongfully refused to make payment of the insurance benefits to which [Goddard] were entitled, with the result that [Goddard's] automobile was repossessed" by BULIC. No breach of contract as such is alleged in the

-12-

third party complaint. The District Court did not make a finding that a breach of contract, as such, existed here. Rather it found that BULIC had "failed and refused" to make the payments under the disability insurance policy to Goddard and as a direct consequence, the bank declared his default, accelerated the payments due under the note, and thereafter repossessed Goddards vehicle and sold it at a distress sale. Thereafter, the court found, the bank commenced the instant case to collect a deficiency sum from Goddard.

In its conclusions, the District Court found that BULIC had violated the provisions of Chapter 42, Title 40, R.C.M. 1947. It is on this basis that the court founded its award of damages and punitive damages.

A cause of action may sound in tort although it arises out of a breach of contract, if a defaulting party, by breaching the contract, also breaches a duty which he owes to the other party independently of the contract. This distinction was carefully noted in Battista v. Lebanon Trotting Association (U.S.C.A. 6th 1976), 538 F.2d 111, where the Sixth Circuit Court applied Ohio law. There the court noted that under Ohio law a tort arises out of a breach of contract if the party also breaches a duty which he owes to another independently of the contract, and which duty would exist even if no contract existed. It is this factor that determines whether an action of this kind is one of contract or of tort. The federal court noted that two cases in Ohio had recently allowed tort damages in breach of contract cases and said:

"These cases are the first in Ohio to recognize the legal trend toward punishing an insurance company for willful refusal to pay a valid claim. Such a tort claim, however, is founded upon a legal duty rather than a contractual duty.

"'An insurer owes its insured an implied-in-law duty of good faith and fair dealing that it will do nothing to deprive the insured of the benefits of the policy. (Fletcher v. Western National Life Insurance Company, 10 Cal.App.3d 376, 89 Cal.Rptr. 78, 47 A.L.R.3d 286, 305 (1970).)'

". . . This special duty, enforced through tort liability, is necessary because of the relationship between the parties and the fact that in the insurance field the insured usually has no voice in the preparation of the insurance policy and because of the great disparity between the economic positions of the parties to a contract of insurance; and furthermore, at the time an insured party makes a claim he may be in dire financial straits and therefore may be especially vulnerable to oppressive tactics by an insurer seeking a settlement or a release.

"The special considerations existent in a consumer-held insurance contract do not apply to an ordinary contract between businessmen . . ." 538 F.2d at 117, 118.

In Montana, insurance companies insuring credit disability risks have a statutory duty that exists beyond the insurance contract itself. Their statutory duty under section 40-4213, R.C.M. 1947, now section 33-21-105 MCA, is that all claims shall be settled as soon as possible and in accordance with the terms of the insurance contract. Thus, BULIC not only had a contractual duty to make payment of a valid claim to Goddard, but it had the statutory duty to do so as soon as possible. It is the breach of that statutory requirement, a duty independent of the insurance contract, that gives rise to tort liability in the case at bar.

Thus, the insurer's duty of good faith and fair dealing with its insureds in the payment of claims has statutory blessing and authority. Accordingly, the measure of damages in such a case as the one at bar is provided in section 17-401, R.C.M. 1947, now section 27-1-317 MCA which allows

-14-

compensation "for all the detriment proximately caused thereby whether it could be anticipated or not."

This Court recognized that a breach of contract might also give rise to an action in tort in State ex rel. Larson v. District Court (1967), 149 Mont. 131, 136, 423 P.2d 598, 600, when it said:

> "Thus, in the insurance contract we have a unique situation; that is, some acts may be both breaches of contract and violations of the laws of Montana."

THE ISSUE OF PUNITIVE DAMAGES

BULIC makes a two-pronged attack on the $5,000.00 punitive damages awarded by the District Court. BULIC contends that there is no authority for punitive damages in this case because of breach of contract and that in any event the evidence is insufficient to support an award of punitive damages.

The propriety of recovery of punitive damages for breaches of insurance contracts where a statutory duty is also violated was settled in this state in State ex rel. Larson.

Here BULIC distinguishes Larson saying a violation of section 40-4213, that "all claims shall be settled as soon as possible" is not a statute for which a penalty is assessed. Therefore, even under Larson, BULIC contends that punitive damages may not be awarded in this case.

BULIC contends that section 40-4213, R.C.M. 1947, now section 33-21-105 MCA has no self-executing criminal sanction. To enforce it, BULIC argues that one must first get an order from the Commissioner of Insurance, section 40-4215, R.C.M. 1947, now section 33-21-111 MCA. Thereafter, there should be a judicial review, section 40-4216, R.C.M. 1947, now section 33-21-112 MCA, after which penalties for violations of the orders of the Commissioner of Insurance are set forth as criminal penalties. Section 40-4217, R.C.M. 1947, now

-15-

section 33-21-113 MCA. BULIC points out there is no specific statute assessing a criminal penalty directly for a violation of section 40-4213.

BULIC's contentions on this point cannot be sustained, because a violation of section 40-4213, with respect to failure of prompt payment of claims in credit disability cases, is subject to the general penalty provided by section 40-2617, R.C.M. 1947, now section 33-1-104 MCA. That section provides:

> "Each violation of any provision of this code, with respect to which violation a greater penalty is not provided by other applicable laws of this state, shall, in addition to any administrative penalty otherwise applicable thereto, upon conviction in a court of competent jurisdiction of this state be punishable by a fine of not less than $50 or more than $1,000 or by imprisonment in the county jail for not less than 30 days or more than 90 days or by both such fine and imprisonment."

There being a criminal penalty available for a violation of section 40-4213, this case is within the rule set forth in Larson, and in Paulson v. Kustom Enterprises, Inc. (1971), 157 Mont. 188, 483 P.2d 708. We distinguish State ex rel. Cashen v. District Court (1971), 157 Mont. 40, 482 P.2d 567 because in Cashen no criminal penalty was involved.

BULIC next contends that even if punitive damages could be awarded here, there is no evidence that BULIC acted wantonly, maliciously or oppressively so as to entitle Goddard to such punitive damages.

The findings of the District Court noted the failure of BULIC to make the payments, the direct consequence of the acceleration of Goddards' note, the subsequent repossession of Goddards' vehicle to be sold at a distress sale and finally, the filing of the deficiency action against Goddards. The District Court also noted that BULIC was repeatedly requested by counsel for Goddard "and implored to make payment of the disability benefits" and that the

-16-

failure and refusal of BULIC to make payment of the disability benefits was an oppressive act or omission on the part of BULIC. The court concluded that by virtue of the violation of section 40-4213, and the distress which resulted therefrom to Goddard, that Goddards were entitled to exemplary damages.

It is not necessary to show actual malice to recover punitive damages. Harrington v. Holiday Rambler Corporation (1978), _____ Mont._____, 575 P.2d 578, 35 St.Rep. 46. Fraud or malice may be actual or presumed. Section 17-208, R.C.M. 1947, now section 27-1-221 MCA. Implied malice may be shown by proof that defendant engaged in a course of conduct knowing it to be harmful and unlawful. Ferguson v. Town Pump, Inc. v. Wallace Diteman (1978), _____ Mont. _____, 580 P.2d 915, 921, 35 St.Rep. 824, 831; Miller v. Fox (1977), _____ Mont. _____, 571 P.2d 804, 34 St.Rep. 1367; Cashin v. Northern Pacific Railway Company (1934), 96 Mont. 92, 28 P.2d 862.

"Malice-in-law" is implied where the defendant's conduct is unjustifiable. Cherry-Burrell Company v. Thatcher (U.S.C.A. 9th 1939), 107 F.2d 65, 69 (applying Montana law). Here, BULIC's conduct was both harmful to Goddard and unlawful because it violated a statute. Its malice will therefore be implied because its actions were unjustifiable.

BULIC claims it was acting in good faith in denying the disability benefits because Goddard and his doctor had reported Goddard to be continuously disabled from October 5, two days before BULIC claims insurance coverage commenced. Again, it is not the claim of Goddard or his doctor as to the commencement of the disability, but BULIC's incorrect position that the coverage commenced on October 7, that brought about the denial. BULIC has persisted in insisting

-17-

that the coverage began on October 7 even through this appeal, in the face of sections 40-4207 and 40-4209 which provide that the term of credit disability insurance shall become effective when the indebtedness is incurred.

No issue is raised by BULIC as to the amount of exemplary damages to be awarded. The office of an award of exemplary damages is to punish the defendant for malicious and wrongful acts, be the malice actual or presumed, where the defendant should suffer some additional penalty for the wrongful conduct and where the exemplary damages will serve as a warning to others and as a deterrent and punishment to the defendant. See Kesler v. Rodgers (Utah 1975), 542 P.2d 354.

The judgment of the District Court is affirmed.

_John C. Sheehy_
Justice

We Concur:

_Frank S. Haswell_
Chief Justice

_John Conway Harrison_

_Daniel J. Shea_

_Gene B. Daly_
Justices

-18-