No. 14902

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

ARNOLD A. BERGER, et al.,

                    Plaintiffs and Respondents,

    vs.

CITY OF BILLINGS, et al.,

                    Defendants and Appellants.

Appeal from:  District Court of the Thirteenth Judicial District,
Honorable C. B. Sande, Judge presiding.

Counsel of Record:

    For Appellants:

        Peterson and Hunt, Billings, Montana
        K. D. Peterson argued, Billings, Montana

    For Respondents:

        Berger, Anderson, Sinclair and Murphy, Billings,
        Montana
        Arnold Berger argued, Billings, Montana

Submitted:  February 21, 1980

Decided:  MAR 1 0 1980

Filed:  MAR 1 0 1980

_Thomas J. Kearney_
                    Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

In 1977 the City of Billings (City) assessed certain storm sewer charges for the year. After the assessments were made, various Billings property owners (Plaintiffs) paid the assessments under protest and filed an action in District Court. Depositions were taken and a trial was held without a jury before the Honorable C. B. Sande on March 15, 1979. The court entered final judgment in favor of plaintiffs on June 21, 1979. From this judgment, the City appeals.

The plaintiffs in this case are owners of property within the Billings city limits. The land involved consists of four separate subdivisions: Sand Cliff Subdivision, Spring Valley Subdivision, Lot 2 of Block 1 Eagles Nest Subdivision, and Certificate of Survey No. 380 which is known as Wanigan Subdivision.

In 1966, pursuant to Ordinance 3251, an improvement of the sewer system of the City was undertaken. This ordinance authorized the issuance of revenue bonds to pay the cost of the improvements and created special funds and accounts for the administration of the moneys derived. The rates charged for the services and facilities were to be "calculated on the basis of anticipated use."

A method of assessment was established by the City, but there were some problems in the equity of that method. As a consequence, a new method was devised and was used commencing in 1977. This new method classified land by the zone in which the land was situated, and by the actual square footage of the property as shown on the tax rolls.

Pursuant to this new method the plaintiffs were assessed for a portion of the costs of the storm sewers. It is this assessment which the plaintiffs paid under protest.

At trial the City put forward testimony to the effect that water coming from the four parcels of land flowed into the City's

- 2 -

storm sewer system. The plaintiffs introduced evidence to the contrary. As to each parcel of land the District Court made several findings of fact; however, for the purposes of this case, only the following findings are pertinent: (1) That the land is classified for purposes of the storm sewer assessment by the zone in which the land is situated rather than by the actual physical characteristics of the land, (2) that all the information necessary to classify and levy assessment according to the physical characteristics of the land was available to the City but had not yet been "computerized", and (3) that the charges or assessments levied by the City on the plaintiffs' lands were not as nearly as possible equitable in proportion to the services rendered.

In the conclusions of law the District Court stated, in part, that the presumption that official duty has been duly performed has been overcome by the plaintiffs. The District Court also stated as a conclusion of law that the assessments were not as nearly as possible equitable in proportion to the services rendered. It was ordered that the City pay back the assessments which had been paid under protest. The City appeals from the judgment.

The controlling issue is whether the District Court erred in finding that the storm sewer assessments were not as nearly as possible equitable in proportion to the services rendered.

The storm sewer system which is the subject of this case was properly authorized by the City pursuant to Ordinance 3251 in 1966. The authority for the Ordinance were sections 11-2217 to 11-2221, R.C.M. 1947. These statutes have been recodified at 7-13-4301 et seq., MCA, and the wording has been changed somewhat.

The pertinent part of the statute can now be found at section 7-13-4304(4), MCA, which states:

- 3 -

> "The water and sewer rates, charges, or rentals
> shall be as nearly as possible equitable in
> proportion to the services and benefits rendered."

For purposes of this case the recodification is not material, because the essential language has not been changed.

The plaintiffs paid the storm sewer assessments under protest and instituted this action. This procedure is authorized by section 15-1-402, MCA. In discussing this statute, this Court has said that the function of the trial court in such actions is to determine whether a correct method of assessing the tax was pursued and whether there was substantial evidence to support this assessment. Johnson v. Johnson (1932), 92 Mont. 512, 519, 15 P.2d 842.

In discussing such actions in the Johnson case, this Court said:

> "[In] . . . challenges [to] the sufficiency of
> the evidence to warrant the order of the board
> and, in determining the question thus presented,
> the court does not substitute its judgment for
> that of the taxing authorities, but merely deter-
> mines, as a matter of law, whether or not the
> evidence presented to the board is sufficient to
> sustain the order made." 92 Mont. at 520.

In the case of Power v. City of Helena (1911), 43 Mont. 336, 116 P. 415, the plaintiff claimed that his property was so situated that it did not receive any benefit from the city's storm sewer. He brought suit to secure an injunction restraining the city from enforcing a tax which was to defray the cost of the sewer. This Court set out the following test where the applicable statute provided that each parcel of land was to be taxed in proportion to the benefit it received:

> "If it appeared from the face of the council pro-
> ceedings that plaintiff's property is so situated
> that it is a physical impossibility for it to be
> benefited, or that the amount of the tax assessed
> against it clearly exceeds the benefit to be de-
> rived from the improvement, then the complaint
> would be invulnerable; for it is the settled law
> in this country that 'the exaction from the owner
> of private property of the cost of a public improve-
> ment in substantial excess of the special benefits

accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation.' (Norwood v. Baker, 172 U.S. 269, 19 Sup.Ct. 187, 43 L.Ed. 443.)" 43 Mont. at 341.

In the present case the District Court made findings as to each of the properties involved. As to each of these it was found that they received little or no benefit from the sewer system. There was also a specific finding that the assessments "were not as nearly as possible equitable in proportion to the services rendered." In such a case, the District Court is not substituting its judgment for that of the taxing body. The District Court is making a finding that the method of assessment was contrary to the express provisions of section 7-13-4304(4), MCA.

As this Court said in Goza v. District Court (1951), 125 Mont. 296, 298-299, 234 P.2d 463:

"It is only when the action of the board is arbitrary, fraudulent, or that a wrong method of assessment was employed . . . that the courts will interfere." (Emphasis added.)

As a consequence the District Court was well within its jurisdiction in making the judgment that was made in this case.

This Court, in turn, will not disturb the judgment of a District Court unless the evidence preponderates against it. Our duty in this regard is to see whether there was sound, competent evidence to uphold the findings of the District Court. Duffie v. Metro. San. & Storm Dist. (1966), 147 Mont. 541, 545, 417 P.2d 227.

There is substantial evidence in the record to support the findings of the District Court. Simply because the City had expert testimony which the plaintiffs lacked does not mean that the City's testimony is inherently superior. The expert's testimony was, to a very large extent, in the form of opinion. His testimony was to the effect that some of the water from these

properties <u>might</u> end up in the sewer system through infiltration or various other routes.  The plaintiffs, in turn, put forth evidence based upon personal observation to the effect that it was highly unlikely or impossible that such water would contribute to the sewer system.  Certainly the evidence is conflicting, but the findings were supported by substantial credible evidence.

Affirmed.

_Frank I. Haswell_
Chief Justice

We concur:

_Gene B. Daly_

_John Conway Harrison_

_____

_John C. Sheehy_
Justices

- 6 -