No. 80-113

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

WILLIAM V. CARROCCIA and
MICHELE V. C. CARROCCIA,

     Plaintiffs, Respondents and
     Cross-Appellants,

   vs.

CHARLES S. TODD, d/b/a
TODD CONSTRUCTION CO.,

     Defendant and Appellant.

---

Appeal from:  District Court of the Sixth Judicial District,
        In and for the County of Sweet Grass.
        Honorable Jack D. Shanstrom, Judge presiding.

Counsel of Record:

  For Appellant:

   James A. Tulley, Big Timber, Montana

  For Respondents:

   Crowley, Haughey, Hanson, Toole & Dietrich, Billings,
   Montana

---

       Submitted on briefs: July 11, 1980

          Decided: AUG 13 1980

Filed:  AUG 13 1980

_Thomas J. Kearney_
           Clerk

Mr. Justice John C. Sheehy delivering the Opinion of the Court.

This is an appeal by the defendant Charles S. Todd, from a judgment against him in the sum of $15,717.42, entered in the District Court, Sixth Judicial District, Sweetgrass County. The suit was for negligence by the defendant in the construction of a log home for the plaintiffs (Carroccias). After a nonjury trial, the District Court entered its damage award for the plaintiffs, and also dismissed Todd's counterclaim for payment of work completed, and ordered all parties to pay their respective costs. Todd appeals from the judgment of damages against him and from the order dismissing his counterclaim. Plaintiffs cross-appeal from the denial by the District Court of their suit costs.

Todd's appeal presents two issues: one, whether the evidence was sufficient to support the District Court's finding of liability on the part of Todd; and two, whether the counterclaim was properly dismissed.

In the Carroccia's cross-appeal, the single issue is whether the plaintiffs are entitled to costs.

In December 1973, William V. Carroccia and Michele V. Carroccia entered into a contract with Charles S. Todd, d/b/a Todd Construction Company, for the construction of a log home on the Carroccia ranch near Big Timber. Todd had been recommended as a skilled homebuilder who had previous experience in building log homes.

Before the Carroccias moved into the log home, it was damaged during a windstorm in December 1973 and the roof was displaced during a January 1974 windstorm. Following the latter windstorm, the Carroccias agreed that Todd should place tie rods in the wall of the log home in an attempt to

-2-

correct the structural problems of the house. After the completion of those repairs, the Carroccias discharged Todd from the contract. Todd was not paid for the installation of the tie rods.

The Carroccia family moved into the home in March 1974. In January 1975, another windstorm occurred and again the house was damaged. The Carroccias reported that a breeze came through the west wall, the pictures were swinging freely on the south wall which was flexing, a lantern which hung from the lower truss of the ceiling was swinging uncontrollably and one of the upper trusses in the living room loudly cracked.

Following the windstorm, the Carroccias made repairs. The roof was replaced, the west wall was dismantled and properly insulated, sway braces were installed in the roof trusses, and door and window installation was corrected. Necessary remaining repairs not done at the time of trial included correction of improper base log installation, restoration of three log walls to plumb, and straightening of the bowed west wall.

The dispute of facts at trial was whether the damages to the house were caused by unsound building techniques, or by defective home design and construction plans. The Carroccias presented two expert witnesses, the log salesman and the builder who repaired the home. Each testified that the construction techniques employed by Todd on the base logs, doors and windows, chimney and roof, all contributed to the instability of the home. Todd produced an expert who was an architect and structural engineer who testified that the home's design was inadequate due to the excessive wind loading prevalent at the home's site.

-3-

The District Court in its findings found essentially that Todd had not constructed the roof of the home according to the details provided and in contradiction to representations made by Todd in his construction bid and that other construction defects by Todd brought about the instability of the house and its hazard to safety. Todd contends that these findings are not supported by substantial credible evidence especially since the District Court did not accord any weight to the testimony of his expert architect.

In Lumby v. Doetch (1979), ___ Mont. ___, 600 P.2d 200, 202, 36 St.Rep. 1684, 1687, this Court stated:

> "In resolving this issue, we are guided by a number of principles established by this Court. The credibility of witnesses and the weight to be given their testimony are matters for the District Court's determination in a nonjury case. (Citation omitted.) Thus, in examining the sufficiency of the evidence, we must view the same in a light most favorable to the prevailing party, and we will presume the findings and judgment by the District Court are correct. (Citation omitted.) We will not overturn the findings and conclusions of the District Court unless there is a decided preponderance of the evidence against them, and when the evidence furnishes reasonable grounds for different conclusions, the findings of the District Court will not be disturbed. (Citation omitted.) The burden of proof is on the appellant. (Citation omitted.)"

Appellant argues the District Court erred in not accepting the testimony of his expert witness, because he had expertise in engineering and architecture, which plaintiffs' witnesses did not. However, this Court recently stated in Berger v. City of Billings (1980), ___ Mont. ___, 607 P.2d 558, 560, 37 St.Rep. 397, 400, that where substantial evidence in the record supports the findings of the District Court, the fact that the prevailing party does not present expert testimony does not mean that the testimony produced by experts on the other side is inherently superior. Where the evidence is conflicting, but the findings are supported by substantial credible evidence, the findings of the District Court will be upheld. Rule 52(a), M.R.Civ.P.

-4-

On the second issue, Todd's counterclaim concerns the Carroccias' refusal to pay for installation of the tie rods inserted in the walls of the house. The Carroccias authorized the installation of the rods after the January windstorm and ratified the agreement after the installation was completed. However, there was testimony that the tie rods themselves were improperly installed in grooves meant to accommodate splines in window and door openings. Also, the house exhibited severe instability in January 1975, nearly a year after the installation of the rods.

Todd had a common law duty to construct the house in a workmanlike manner. Mitchell v. Carlson (1957), 132 Mont. 1, 10, 313 P.2d 717, 721-2. Here the duty of construction included proper installation of logs, doors and windows in such a manner as to assure stability. The tie rods were installed only after the original construction had proven inadequate. The instability persisted after the installation of the rods.

A promise to do what a person is already obligated by law or contract to do is not sufficient consideration for a promise made in return. Kovacich v. Metals Bank & Trust Company (1961), 139 Mont. 449, 451, 365 P.2d 639, 640. Todd's duty as a contractor to provide a stable log home was not fulfilled by him at anytime before or after the installation of the tie rods. Consideration was therefore lacking in the claimed supplemental agreement.

Rules 41(b) and (c), M.R.Civ.P., provide that a counterclaim may be dismissed where, upon the facts and the law, the claimant has shown no right to relief. Consideration is an essential element of a contract. Section 28-2-102(4), MCA. Since consideration was lacking, the contract could not be enforced, and Todd had no right to relief on his counterclaim.

However, Todd claims an estoppel here because the Carroccias promised to pay for the tie rods after they were installed when they collected the insurance for damages on the home. The Carroccias did in fact collect insurance for the home damage, but thereafter refused to make payment to Todd for the tie rods. Todd claims an estoppel against the Carroccias on this point.

One of the elements that a party must establish in the evidence to justify estoppel in his favor is that the party claiming estoppel relied on the representation or promise made to him and acted upon it to his prejudice. State ex rel. Howeth v. D. A. Davidson & Co. (1973), 163 Mont. 355, 367, 517 P.2d 722, 728. This element is lacking here. The party claiming estoppel must in fact act upon the promise or representation in such manner as to change his position for the worse. Smith v. Krutar (1969), 153 Mont. 325, 332, 457 P.2d 459, 463. Moreover, estoppel has reference to conduct of the person estopped, and has no application where the omissions of the party claiming estoppel brought about the problem. First Sec. Bank of Bozeman v. Goddard (1979), ____ Mont. ___, 593 P.2d 1040,/1046, 36 St.Rep. 854, 860-1; and section 26-1-601, MCA.

The third issue relates to the Carroccias' cross-appeal from the denial of their costs by the District Court. Rule 54(d), M.R.Civ.P., provides costs to the prevailing party unless the court otherwise directs, except where expressly provided by statute. Section 25-10-101(3), MCA, expressly provides costs, as of course, in actions in which plaintiff recovers money or damages exceeding $50.00.

Here, plaintiffs sought monetary damages from the defendant and received judgment in the amount of $15,717.42.

-6-

Pursuant to section 25-10-101(3), MCA, plaintiffs were entitled to costs. Medhus v. Dutter (1979), _____ Mont. ___, 603 P.2d 669, 674, 36 St.Rep. 2044, 2051. The District Court erred in denying the plaintiffs' claim for costs.

The judgment for damages in favor of the plaintiffs is affirmed. The order of the District Court dismissing Todd's counterclaim is also affirmed. The order denying costs to the Carroccias is reversed. The cause is remanded for determination of the Carroccias' costs.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-7-