DORA C. REYES, ) APPEAL NO. 90-017
 ) CIVIL ACTION NO. 88-744
 Plaintiff/Appellee, )
 )
 vs. ) OPINION
 )
DELFIN D. EBETUER, et al., )
 )
 Defendants/Appellants. )
_____ )

Argued and Submitted January 31, 1991

Counsel for Plaintiff/Appellee: Jane Mack
 Micronesian Legal Services Corp.
 Marianas Office
 P.O. Box 826
 Saipan, MP 96950

Counsel for Defendants/Appellants: Reynaldo O. Yana
 P.O. Box 52
 Saipan, MP 96950

BEFORE: DELA CRUZ, Chief Justice, VILLAGOMEZ and BORJA, Justices.

DELA CRUZ, Chief Justice:

This is an appeal by a building contractor, Delfin D. Ebetuer ("Ebetuer"), from a Superior Court judgment finding him liable for defective workmanship in the construction of a new house for Dora C. Reyes ("Reyes"), and awarding damages, attorney's fees and costs.[1]

_____

[1] See Reyes v. Ebetuer, Civil Action No. 88-744, Memorandum Decision (N.M.I. Super. Ct. April 12, 1990).

## I.

On January 17, 1986, Ebetuer's contracting firm, ADP Enterprises (a sole proprietorship), executed a written contract with Reyes to construct a concrete residential house for her in Garapan on the island of Saipan. Ebeteur signed the contract in his capacity as general manager of the firm.

Construction was financed by a loan from the U.S. Farmers Home Administration ("FmHA"). The FmHA construction contract specified that the house was to be built in accordance with the agency's Minimum Property Standards and plans and specifications of a "revised Mihaville model type 3-A" house.

Ebetuer's firm completed construction on May 30, 1986.

Thereafter, ADP Enterprises executed a one-year written builder's warranty (required under the construction contract) guaranteeing repair or reimbursement for repair of defects in "all workmanship, materials and the installation of equipment . . . ." Reyes was required to provide ADP Enterprises with written notice of defects to invoke the warranty.

Reyes occupied her new house June 2, 1986. Shortly thereafter, she began to experience problems: the door lock jammed and cracks appeared in the wall plastering, beams and ceiling. Reyes orally notified Ebetuer of these defects. He did not effectively repair them.

Other defects subsequently appeared. These related to the carport, the smoke alarm, interior and exterior painting, floor tiles, windows, doors, the slope of the roof, roof beam rebars, and

422

termite infestation.

Reyes filed suit against Ebetuer individually, ADP Enterprises and another of Ebeteur's firms on November 2, 1988.[2] Following pre-trial discovery and a trial held February 20, 1990, judgment was entered in favor of Reyes. Ebeteur appeals.

## II.

Ebetuer raises several issues on appeal.

First, he challenges a pre-trial order striking his untimely-filed answers to Reyes' requests for admission.

■ "The control of discovery is entrusted to the sound discretion of the trial court and orders concerning discovery will not be disturbed on appeal in the absence of a clear abuse of discretion." In re Marriage of Adams, 729 P.2d 1151, 1159 (Kan. 1986). Accord: Brown v. Superior Court in and for Maricopa County, 670 P.2d 725 (Ariz. 1983); Diversified Capital Corp. v. City of North Las Vegas, 590 P.2d 146 (Nev. 1979). See also Robinson v. Robinson, No. 89-012 (N.M.I. Feb. 6, 1990) (scope of review concerning issues relating to exercise of trial court's discretion is limited to whether there has been manifest or gross abuse of discretion).

■ The second issue is whether the trial court erred in ruling that Reyes' breach of contract claim was not barred by the builder's warranty. Whether Reyes could independently claim relief

---

[2] As the trial court noted, "[i]t is alleged that the companies are just names under which the individual, Delfin D. Ebeteur, operates and defendant does not deny this. Thus, the party being sued is, for all practical purposes, Delfin D. Ebeteur." Memorandum Decision at 1, n.1.

for breach of contract is a question of law which we review de novo. See Borja v. Rangamar, No. 89-009 (N.M.I. Sept. 17, 1990) (analysis of contract was a question of law, reviewable de novo).

The third issue is whether the damages awarded by the trial court are clearly erroneous. Since a trial court's assessment of damages rests on determinations of questions of fact, First National Bank of Chicago v. Material Service Corp., 597 F.2d 1110 (7th Cir. 1979), a court's award of damages will not be reversed unless it is clearly erroneous. Meader By and Through Long v. United States, 881 F.2d 1056 (11th Cir. 1989) (citing Fed.R.Civ.P. 52(a)). See also 1 CMC § 3103 ("Supreme Court may not . . . set aside findings of fact unless they are clearly erroneous"); Repeki v. MAC Homes (Saipan) Co., Ltd., No. 90-002 (N.M.I. Mar. 14, 1991) (pursuant to Com.R.Civ.P. 52(a), Supreme Court will set aside a finding of fact only if it is clearly erroneous).

The fourth issue pertains to whether the court erred in concluding that Reyes could also claim damages under the doctrine of implied warranty of habitability, despite the fact that Ebetuer was not the vendor of the house. The nature and applicability of a common law doctrine under which a claim for relief is made are questions of law, reviewable de novo. Ada v. Sablan, No. 90-006 (N.M.I. Nov. 16, 1990).

The final issue is whether Ebeteur violated the NMI Consumer Protection Act, 4 CMC § 5101 et seq. (hereafter "Consumer Protection Act" or "Act"), because of statements one of his employees made to Reyes regarding certain defects which were

424

discovered after the one-year coverage period under the builder's warranty expired.[3] If he violated the Act, Ebetuer questions the the trial court's award of attorney's fees.

 Whether the Consumer Protection Act has been violated based on particular actions is a legal question which we review de novo. See Blake v. Federal Way Cycle Center, 698 P.2d 578 (Wash. Ct. App. 1985) (analysis of Washington Consumer Protection Act). If the Act was violated, we review the reasonableness of the award of attorney's fees applying an abuse of discretion standard. Booker v. Midpac Lumber Co., Ltd., 649 P.2d 376 (Haw. 1982).

## III.

Reyes sued Ebetuer for: (a) breach of contract; (b) breach of implied warranty of habitability; (c) breach of warranty for goods supplied in a consumer transaction, pursuant to the federal Magnuson-Moss Act, 15 USC § 2301 et seq.; and (d) breach of the Consumer Protection Act for supplying defective goods and for falsely representing that the construction defects were not serious. We note that none of these claims are based on breach of the express builder's warranty.

The trial court determined that the Magnuson-Moss Act was inapplicable because regulations promulgated pursuant to the Act clearly specify that "consumer products" do not include building materials used for construction of a house or other realty. 16 C.F.R. § 700.1(f) (1989). This is not at issue on appeal.

---

[3]The employee told Reyes that the cracks in the walls, beams and ceiling were minor and only needed to be covered with plaster.

The action proceeded to trial on the three remaining claims.

Before addressing the issues raised under these claims, we will consider the pre-trial ruling striking, as untimely filed, Ebetuer's answers to Reyes' requests for admission.

A.

## The Requests For Admission

Reyes filed her requests for admission on October 30, 1989. Eight days later, Ebetuer's counsel, Reynaldo Yana, noticed his appearance as counsel. Ebeteur failed to file answers within thirty days after service, as required by Com.R.Civ.P. 36(a). He did not file answers until January 2, 1990, over sixty days later.

Com.R.Civ.P. 36(a) provides, in pertinent part:

> Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request, or within such shorter or longer time as the court may allow, the party to whom the request is directed serves upon the party requesting the admission a written answer or objection addressed to the matter, signed by the party or his attorney, but, unless the court shortens the time, a defendant shall not be required to serve answers or objections before the expiration of 45 days after service of the summons and complaint upon him.

Ebetuer was served with the summons and complaint in November, 1988. He filed an answer to the complaint in December of 1988. Reyes served her requests for admission Ebetuer almost a year later, on October 31, 1989. Thus, more than forty-five days had expired after service of the summons and complaint.

Com.R.Civ.P. 36(a) clearly specifies that a matter of which an admission is requested is admitted within thirty days of service, unless the court allows a longer time to file an answer. Here,

426

neither Ebetuer nor Yana sought permission from the court to file an answer beyond the deadline. The answer was thus untimely filed.

The first reason Yana gives for this error--that he did not know that failure to timely file Ebeteur's answer would result in admission of the requested points--is unacceptable. Attorneys admitted to practice before Commonwealth courts are expected to know and be familiar with all court rules.

The second reason Yana gives for the error--that he did not know that among the court papers Ebeteur gave him was the requests for admission--is also unacceptable. An attorney who undertakes to represent a client has an obligation to familiarize himself with all documents filed prior to his retention.

Under the circumstances, we hold that the trial court did not abuse its discretion in striking Ebeteur's untimely filed answers.

We note that Ebeteur was not prejudiced by the ruling. The admissions pertain to the alleged construction defects, which were the subject of testimony at trial. He was able to cross-examine witnesses on these points. He had the opportunity to cross-examine Efrain F. Camacho, a civil engineer testifying for Reyes whose expertise he admitted. In addition, Ebeteur had his own expert witness testify regarding the defects.

B.

**Availability of Other Theories of Recovery**

Essentially, Ebeteur asserts that Reyes is precluded by the express builder's warranty from bringing a claim for defective construction under any other legal theory. He contends that the

427

warranty constituted the exclusive means to enforce a claim for defective workmanship. We disagree.

The builder's warranty provides, in part: "[t]his warranty shall be in addition to, and in no way reduce, all other rights and privileges which [the owner] may have under any other law or instrument, and shall be binding on the warrantor . . . ." Thus, the warranty clearly did not preclude Reyes from claiming for relief under other laws. The fact that she chose not to claim under the warranty does not mean that she could not seek relief under other relevant legal principles or statutes.

Accordingly, we hold that the trial court was correct in determining that Reyes was not barred by the builder's warranty from asserting claims for relief under other theories of recovery.

We now examine the validity of Reyes' claims for breach of contract and breach of implied warranty of habitability.

### Breach of Contract

The construction contract provided that Ebetuer was to furnish materials and perform work for construction of a three-bedroom, one-bathroom concrete residential house with a carport. As noted above, the contract required the house to be built in accordance with FmHA Minimum Property Standards. Ebetuer had a duty to comply with all of the Minimum Property Standards:

> Ordinarily, where a contract calls for achieving specific standards, strict compliance with those standards is required. A contractor is required to perform in accordance with plans and specifications.

Gilbert v. City of Caldwell, 732 P.2d 355, 363 (Idaho Ct. App.

1987), _appeal after remand_, _Gilbert v. Tony Randall Construction_, 772 P.2d 242 (Idaho Ct. App. 1989).

 The record shows that because of defects proven (or admitted) Ebeteur failed to conform with certain provisions of the Minimum Property Standards.[4] His failure to do so constituted a breach upon which relief could be granted. _See_ _Restatement (Second) of Contracts_ § 235(2) (1981) ("[w]hen performance of a duty under a contract is due any non-performance is a breach").[5]

## Breach of Implied Warranty of Habitability

Ebetuer argues that since he is not the vendor of the house but merely the builder, the trial court erred, as a matter of law, in applying the doctrine of implied warranty of habitability. He contends that the doctrine should be applicable only where the builder is also the vendor of the house constructed. He urges us to follow those jurisdictions which take this approach. In light of the evolving history of the doctrine--which has recently been expanded to cover cases where the builder is not the vendor--we reject Ebeteur's proposal.

Originally, under the harsh common law rule of _caveat emptor_

---

[4]The fact that FmHA found the work satisfactory does not relieve the contractor from liability to the owner for deficiencies in performance. _Fox v. Webb_, 105 So.2d 75, 67 A.L.R.2d 1007 (Ala. 1958). The owner is not bound by the agency's determination. _Id._ The record in this case indicates that FmHA overlooked deficiencies in Reyes' house.

[5]The Restatement is applicable pursuant to 7 CMC § 3401 (in the absence of written or local customary law to the contrary, common law rules expressed in the Restatements are rules of decision in Commonwealth courts).

("let the buyer beware"), the homeowner was required to bear all risks of negligent or faulty construction.

The implied warranty of habitability is a court-made doctrine that arose in this century to provide a basis for relief for deficient housing construction. See generally Shedd, The Implied Warranty of Habitability: New Implications, New Applications, 8 Real Est. L.J. 291 (1980) (hereafter "Shedd"). "[T]he law will imply a warranty that the house which was to be built by the defendants for the plaintiff should be a house which was habitable and fit for human beings to live in." Id. at 294, quoting Miller v. Cannon Hill Estates, Ltd., 2 K.B. 113, 120 (1931). At its inception, the doctrine covered only houses purchased before completion.

During the 1960s, the doctrine expanded in a number of jurisdictions to protect buyers of new houses that were already completed when purchased. Shedd, supra at 295; see, e.g., Glisan v. Smolenske, 387 P.2d 260 (Colo. 1963).

In the 1970s, the doctrine again expanded in certain jurisdictions to protect a second purchaser of a house when the defect to the house originated with a builder-seller. Shedd, supra at 298. Up to this point, the courts applied the doctrine only when the builder contracted to construct a house on the builder's land. Shedd, supra at 300; see, e.g., Peterson v. Hubschman Construction Co., 389 N.E.2d 1154 (Ill. 1979). The question of whether the doctrine applies to new houses built on the purchaser's land has since been addressed in other jurisdictions. See, e.g.,

Moxley v. Laramie Builders, Inc., 600 P.2d 733 (Wyo. 1979) (recognizing applicability of doctrine in such circumstances).

We note that the our trial court has applied the doctrine of implied warranty of habitability in at least one case. Babauta v. Valdez, 2 CR 1181 (CTC 1987). This decision is not binding precedent.[6] Nonetheless, in light of the rationale and historical evolution of the doctrine, we are of the opinion that it should apply in the Commonwealth, providing an alternative basis for relief for deficient housing construction. We therefore adopt the doctrine of implied warranty of habitability and make it applicable in the Commonwealth, beginning with this case.

The most important reason for doing so is the need to protect new homeowners from shoddy construction work. The purchase of a house is often the biggest financial investment a person makes. The harsh rule of caveat emptor has no place in today's society.

With respect to the issue of whether the doctrine covers those situations where (a) the builder of the house is not the vendor and (b) the house is constructed on land owned by the homeowner, we hold that it does. Such considerations should not determine whether the implied warranty of habitability may apply in a given case.[7]

---

[6]Apart from the fact that Babauta is a trial court decision, it was also a default judgment. The court did not provide reasoning as to why NMI courts should adopt the doctrine.

[7]The question of how long after construction is completed this remedy may be available depends on a case by case review, taking relevant factors into account--including the age of a home, its maintenance and the use to which it has been put. See Barnes v. Mac Brown Co., 342 N.E.2d 611 (Ind. 1976).

431

In a case similar to this, <u>Moxley v. Laramie Builders</u>, <u>supra</u>, the Supreme Court of Wyoming expanded the doctrine to include a builder-non vendor situation where the house was constructed on land belonging to the homeowner. According to the <u>Moxley</u> court:

> We can see no difference between a builder or contractor who undertakes construction of a home and a builder-developer. To the buyer of a home the same considerations are present, no matter whether a builder constructs a residence on the land of the owner or whether the builder constructs a habitation on land he is developing and selling the residential structures as part of a package including the land. It is the structure and all its intricate components and related facilities that are the subject matter of the implied warranty. Those who hold themselves out as builders must be just as accountable for the workmanship that goes into a home that a buyer . . . expect[s] to occupy . . . as are builder developers.

600 P.2d at 735.

C.

<u>Damages and Sufficiency of the Evidence</u>

 Ebetuer argues that the trial court's award of damages is not supported by the evidence and is, therefore, clearly erroneous.[8]

Specifically, Ebeteur contends that the court erred in

---

[8]The trial court assessed damages as follows:

| | | | |
|---|---|---|---|
| (1) | Out-of-Pocket Expenses | | $2,500.00 |
| (2) | Cost of Repair | | |
| | (a) Concrete cracks, paint, windows doors, locks, tiles, etc. | | 20,000.00 |
| | (b) Roof | | 6,300.00 |
| | (c) Termite Eradication | | 900.00 |
| | (D) Two (2) weeks lodging at a hotel during repair--14 days @ $90.00 per day | | 1,260.00 |
| (3) | Loss of Market Value | | 100.00 |
| | TOTAL | | $31,060.00 |

Final Order and Judgment at 1.

assessing a separate award of $6,300 for roof repair. He cites testimony by Reyes' expert witness Efrain Camacho that the cost for repair of the entire house was "anywhere from $15,000 to $20,000 exclusive of material--or inclusive of material and labor." TR 41. Ebetuer construes the $6,300 for roof repair to be included within this estimate.

If this argument has merit, the separate award of $6,300 for roof repair (to the extent it should have been recognized as within the $20,000 awarded to repair the entire house) was erroneous and should be set aside. Otherwise, Reyes would be awarded twice for roof repair.

After reviewing the record, we are of the opinion that Ebetuer is correct. The cost of repairing the roof is part of the overall cost of repairing defects in the "entire house", as Efrain Camacho testified. We fail to find justification for the separate award of $6,300 for the roof repair. Accordingly, this portion of the damages award is clearly erroneous and is set aside.

Ebetuer also argues that the award for Reyes' hotel expenses is not supported by the evidence. He contends that it was not necessary for Reyes to move out of the house for several days while the roof was being repaired. We disagree. The work needed to repair the deficiencies to the house was quite substantial. Under the facts of this case, we are not prepared to second-guess the trial court's finding that it was necessary for Reyes to move out of the house for two weeks so that the repair work could be performed. This award shall, therefore, stand.

D.

## Breach of the Consumer Protection Act

Ebetuer argues that the evidence does not support the trial court's conclusion that he violated the Consumer Protection Act.

Before addressing this issue, we note that he does not question or challenge the applicability of the Act to goods or services supplied in connection with new home construction.

According to 4 CMC § 5105:

> The following unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared to be unlawful:
>
> . . . .
>
> (e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;
>
> . . . .
>
> (g) Representing that goods or services are of a particular standard, quality or grade, or that goods are of a particular model, if they are of another;
>
> . . . .
>
> (m) Engaging in any other act or practice which is unfair or deceptive to the consumer.
>
> . . . .

The trial court found that Ebetuer violated these provisions. Ebeteur contends that there was no evidence to support findings that he expressly made "representations" within the meaning of 4

434

CMC § 5105(e) and (g).[9]

We disagree. In executing the construction contract, Ebeteur expressly represented that he would perform his work in accordance with FmHA Minimum Property Standards.[10] As noted above, the record reveals that he failed to conform with certain provisions of those standards. We therefore hold that Ebetuer violated 4 CMC § 5105(g) by "[r]epresenting that . . . services are of a particular standard, quality or grade . . . if they are of another."[11] That being the case, we need not address the contested violations of 4 CMC § 5105(e) and (m).

According to 4 CMC § 5112(a), the trial court "shall award costs and reasonable attorney's fees if the plaintiff prevails" in a claim based on the Consumer Protection Act. Since the Act was violated, the trial court appropriately awarded attorney's fees. There being no showing that the attorney's fees awarded were excessive or unreasonable, the award shall stand.

---

[9]He also asserts that there is no evidence that he violated 4 CMC § 5105(m).

[10]He also impliedly represented that he would perform his work in a skillful and workmanlike manner. See Carrocia v. Todd, 615 P.2d 225 (Mont. 1980) (contractor had common law duty to construct house in workmanlike manner); Johnson v. Knight, 459 F.Supp. 962 (N.D.Miss. 1978) (contractor had implied duty to perform work with that degree of skill or workmanship which is possessed by those of ordinary skill in the particular trade for which one is employed).

[11]Accordingly, we need not consider whether Ebeteur violated the common law duty that construction be completed in a skillful and workmanlike manner. Cf. Carrocia, supra, Johnson, supra.

## IV.

Except for that portion of the judgment separately awarding damages of $6,300 for roof repair, which we reverse, the remainder of the trial court's judgment is **AFFIRMED**, and the matter is **REMANDED** to the trial court to enter an amended judgment consistent with this opinion.[12]

Entered this _29ᵗʰ_ day of January, 1992.

_____
JOSE S. DELA CRUZ, Chief Justice

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice

---

[12]Reyes has asked that Ebeteur be sanctioned for filing a frivolous appeal. We agree that some of the issues he has raised are frivolous. However, we decline to award sanctions. Instead, we strongly admonish attorney Yana that he is expected to know all Commonwealth court rules.