STATE OF MONTANA ex rel. ELIZABETH CASHEN, PETITIONERS, v. THE DISTRICT COURT OF THE THIRTEENTH JUDICIAL DISTRICT OF THE STATE OF MONTANA, IN AND FOR THE COUNTY OF YELLOWSTONE, AND THE HONORABLE CHARLES LUEDKE, JUDGE THEREOF, RESPONDENTS.

No. 12004.
Submitted February 9, 1971.
Decided March 11, 1971.
Rehearing Denied March 22, 1971.
482 P.2d 567.

Lewis E. Brueggemann, Billings, argued, for petitioner.

Crowley, Kilbourne, Haughey, Hansen & Gallagher, Billings, Cale Crowley, Billings, argued for respondents.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an original proceeding by petitioner seeking appropriate relief from orders of the District Court of Yellowstone County (1) granting her insurer partial summary judgment eliminating her claim for exemplary damages, and (2) overruling her objections and requiring her to respond to her insurer's request for admissions. This relief is sought in petitioner's suit against her insurer and its adjuster to set aside her release, aid for damages arising out of settlement of a collision loss on her automobile.

Petitioner is an adult Indian who is an enrolled member of the Crow Tribe residing on the Crow Indian Reservation at Saint Xavier, Montana. On June 6, 1969 she purchased a used 1967 Ford Galaxie from Hardin Auto Company under an installment contract for $1,895. After deduction of a trade-in allowance and addition of finance charges, a credit life insurance premium, and title fees, the remaining balance of the purchase price was $1,302.57. This was to be paid in three installments: $512.57 on December 26, 1969; $185 on April 26, 1970; and $605 on December 26, 1970. Hardin Auto Company assigned this contract with recourse to the Big Horn County State Bank.

Collision insurance covering physical damage to petitioner's automobile was secured from Farmers Insurance Exchange, the

insurer. This policy was a standard $100 deductible collision insurance policy giving the insurer the option of settlement of any loss thereunder by payment of either of the following amounts, less the deductible: (1) the reasonable cost of repairs not exceeding the actual cash value of the automobile at the time of loss, or (2) the actual cash value of the car at the time of loss.

After petitioner's purchase of the car, her son had an accident involving fender damage of $117, the transmission was repaired, and a burned out engine was replaced. At the time of the collision loss involved in this proceeding, petitioner still owed a balance of approximately $389 for these items.

On September 20, 1969 petitioner's son had another accident with the car. The settlement of the collision loss in this accident forms the basis of petitioner's suit in the district court and this original proceeding.

Following notice of the loss, the local agent of the insurer secured three repair bids on the damage: (1) Hardin Auto Company, $907.70 excluding frame damage and front end suspension damage; (2) Graham-Staunton Chevrolet, $1,085.73, excluding frame damage and front end suspension damage, and (3) Tom's Auto Repair Shop, $1,066.62, with no exclusions. These bids were received by the Billings claim office of the insurer on November 3, 1969. An adjuster there, Ray Olson, received them on the following day and on November 5 drove to Hardin to examine the car and settle the loss. He was accompanied by a salvage buyer from Billings, Louis Schoenbeck.

In Hardin they examined the car. Schoenbeck estimated the cash value of the car immediately preceding the accident at $1,200, noting prior damage and repairs from three previous accidents. He fixed the salvage value of the car at $200. They next went to the Hardin Auto Company where they talked to Bill Christensen. Schoenbeck described the evidence of prior damages and repairs to the car and his estimate of $1,200. Christensen agreed. Olson accepted this figure of $1,200 as the actual cash value of the car at the time of loss.

Olson also was aware that petitioner owed a $1,302.57 balance

on the installment contract of purchase plus the $389 balance owed for prior repairs—almost $1700 on a car valued at $1,200.

Olson then drove to petitioner's home to discuss settlement. Only two persons were present at this discussion and settlement: Olson and petitioner. Although many facts are in dispute concerning just what occurred at this time, it is clear that a settlement was made on the basis of repair costs with Olson delivering a settlement draft to petitioner for $927.50 payable to petitioner and the Big Horn County State Bank as joint payees. The settlement figure was based on a total repair cost of $1,012.50 plus a towing charge of $15 less the $100 deductible, and upon Olson's opinion that the car could be repaired on this basis. Thereafter Olson returned to Billings and was not involved in subsequent events.

Petitioner took the settlement draft to the Big Horn County State Bank on November 6, 1969. Both petitioner and the bank endorsed the draft containing (a release of all claims, and petitioner deposited the money in her account. Unknown to petitioner, the bank at that time deducted $512.57 of this deposit and applied it to payment of the first installment of the auto purchase contract due on December 26, 1969.

Petitioner then had Bud's Standard Service repair the car as best they could at a cost of somewhere between $300 and $400. Petitioner was dissatisfied with the repairs and drove the car to Hardin Auto Company where she was told that the settlement should have been made in the first place on the basis of total loss. On January 19, 1970 petitioner notified the insurer of her dissatisfaction and requested that her car be satisfactorily repaired or replaced. Later, through her attorney, she demanded a total loss settlement of $1605 based on the top value of a car of that make and model in the N.A.D.A. Guide. Following refusal of this demand by her insurer, she filed suit in the district court.

In the district court suit petitioner seeks to have her release set aside on the ground of fraud, and to be awarded compensatory damages based on the total loss settlement heretofore men-

tioned together with exemplary damages of $500,000. The claim for exemplary damages is based upon alleged fraud committed by the insurer in negotiating and settling her claim which is alleged to constitute both a breach of the insurance contract and violation of Chapter 35 of the State Insurance Code entitled "Trade Practices and Frauds," sections 40-3501 through 40-3522, R.C.M.1947. Defendants are the insurer, Farmers Insurance Exchange, and the insurer's adjuster, Ray Olson.

Considerable pretrial discovery was had by way of depositions, interrogatories, and requests for admissions. Involved in the present controversy are two separate orders of the district court: (1) An order granting partial summary judgment to defendants eliminating petitioner's claim for exemplary damages, and (2) An order overruling objections to defendants' requests for admissions relating to prior damage to the car, tracing its prior ownership, facts concerning the purchase transaction, and ordering petitioner to respond. In the instant proceedings before this Court, petitioner seeks review and reversal of these two orders of the district court.

The principal issue before us is the granting of partial summary judgment removing petitioner's exemplary damages claim. Petitioner contends that her claim encompasses both a breach of the insurance contract and statutory violation of provisions of the state insurance code thereby entitling her to exemplary damages under State ex rel. Larson v. District Court, 149 Mont. 131, 423 P.2d 598. Defendants contend no violation of the insurance code is involved, but only a claim for breach of contract for which exemplary damages are not recoverable under section 17-208, R.C.M.1947, and Westfall v. Motors Ins. Corp., 140 Mont. 564, 374 P.2d 96.

Montana's basic statute authorizing an award of exemplary damages is section 17-208, R.C.M.1947, which provides:

*"In any action for a breach of an obligation not arising from contact,* where the defendant has been guilty of oppression, fraud, or malice, actual or presumed, the jury,in addition to the

actual damages, may give damages for the sake of example, and by way of punishing the defendant.'' (Emphasis added).

In *Westfall,* an action for compensatory and punitive damages by an insured under an automobile collision insurance policy against his insurer based on fraudulent representations of the adjuster in inducing him to settle for less than the actual cash value of the insured car at the time of loss, this Court held that exemplary damages were not recoverable under section 17-208. In *Westfall* we quoted the following language with approval from a California case construing a like statute:

'' '(A)n award [for punitive damages] may not be granted in an action based on a breach of contract even though the defendant's breach was willful or fraudulent.' Crogan v. Metz, 47 Cal.2d 398, 303 P.2d 1029, 1033.''

See also: Ryan v. Ald, Inc., 146 Mont. 299, 406 P.2d 373.

Subsequently, we carved out an exception to this general rule of *Westfall* in State ex rel. Larson v. District Court, 149 Mont. 131, 423 P.2d 598. *Larson* involved an action by an insured under a disability policy against his insurer for compensatory and punitive damages resulting from the unjustified refusal of his insurer to make further periodic disability payments under the terms of the policy. The complaint alleged that the insurer by its conduct not only breached the contract provisions of the insurance policy, but also unlawfully violated provisions of the state insurance code requiring prompt payment of periodic benefits due under disability policies and providing criminal penalties for such violation. In *Larson* we held that where the acts or omissions of an insurer are oppressive, malicious or fraudulent and constitute both a breach of the insurance contract and an unlawful violation of the state insurance code, exemplary damages are recoverable.

The distinguishing feature of the holdings in *Westfall* and *Larson* is the absence of unlawful violation of the state insurance code in the former, and its presence in the latter.

In the instant case, petitioner claims violation of Chapter 35 of the State Insurance Code, sections 40-3501 through 40-3522,

R.C.M.1947. The purpose of Chapter 35 is expressed in section 40-3501 which provides in pertinent part:

"The purpose \* \* \* is to regulate trade practices in the business of insurance [in accordance with an act of Congress], by defining \* \* \* all such practices in this state which constitute unfair methods of competition or unfair or deceptive acts or practices [and prohibiting them]." (Bracketed material paraphrased).

▮ Sections 40-3514 and 40-3515 grant the insurance commissioner the power to hold hearings, make findings, issue cease and desist orders etc. concerning unfair competition, trade practices, and frauds. The balance of Chapter 35 relates to specific prohibited practices. Even a cursory reading clearly indicates that the entire chapter has nothing to do with the negotiation and settlement of insurance claims; on the contrary it applies to unfair trade practices by which one insurance company gains an unfair competitive advantage over another by false advertising (40-3503), libel or slander (40-3504), false representations, to induce policyholders to keep, cancel, forfeit, or convert insurance policies (40-3505), false financial statements (40-3506), defamation of financial condition of insurance companies (40-3507), boycotts, coercion or intimidation resulting in restraint or monopoly in insurance business (40-3508), unlawful discrimination in life and disability insurance (40-3509), rebates in life, disability and annuity contracts (40-3510, 40-3511), rebates on property insurance (40-3512), stock operations (40-3513), loans to induce favoritism (40-3516), interlocking ownership or management of insurance companies (40-3517), political contributions (40-3518), improper premium charges (40-3519), fictitious insurers (40-3520), prohibiting life insurance companies from business relationship with mortuaries (40-3521), and prohibiting false claims and proofs of loss (40-3522).

Sixteen of the sections in Chapter 35 contain no criminal penalties; the other six providing such penalties do not relate in any way to the negotiation or settlement of automobile collision losses.

We conclude that Chapter 35 as a whole was never intended to apply to the investigation, settlement, and negotiation of automobile insurance claims and that defendants have violated no statute therein, penal or otherwise. Absent any violation of the state insurance code, Westfall and not Larson controls the instant case and exemplary damages are unauthorized here as a matter of law. The district court was correct in granting partial summary judgement eliminating petitioner's exemplary damage claim.

The second issue requires brief comment. The insurer filed written requests seeking admissions from petitioner concerning prior ownership of the car in question, prior damage to it in previous accidents, facts concerning its purchase by petitioner, and similar matters. Petitioner filed extensive written objections to these requests by defendants which defy comprehension or summary.

The requested admissions are clearly relevant, competent, material, and proper. The actual cash value of the insured automobile at the time of loss depends on its previous use and care from the time of its initial purchase. This particular automobile was known by defendants to have been involved in at least three prior accidents and to have had prior owners, so the requested admissions were very much in order and unobjectionable. The purpose of this procedure in the civil rules is to dispense with the necessity of evidence through witnesses at the trial on matters concerning which there is no bona fide controversy. The district court was correct in overruling petitioner's objections to defendants' request for admissions and in ordering petitioner to respond within 20 days.

Having affirmed the rulings of the district court on the two issues involved in this original proceeding, the cause is remanded to the district court for further proceedings.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES JOHN C. HARRISON, DALY, and CASTLES, concur.