No. 82-219

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

ALTON P. HARRIS,

Plaintiff and Respondent,

vs.

AMERICAN GENERAL LIFE INSURANCE
COMPANY OF DELAWARE,

Defendant and Appellant.

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable Joseph B. Gary, Judge presiding.

Counsel of Record:

For Appellant:

Berg, Coil, Stokes & Tollefsen, Bozeman, Montana
Gig A. Tollefsen argued, Bozeman, Montana

For Respondent:

Nash & Nash, Bozeman, Montana
Donald Nash and Mike Nash argued, Bozeman, Montana

Submitted: November 10, 1982

Decided: February 9, 1983

Filed: FEB 9 - 1983

_____ Clerk

Mr. Chief Justice Frank I. Haswell delivered the Opinion of the Court.

Defendant insurance company appeals from a judgment entered in the District Court of the Eighteenth Judicial District assessing $30,000 in punitive damages against defendant. We affirm.

On September 8, 1970, defendant issued a $10,000 life insurance policy with a $10,000 accidental death benefit rider to plaintiff's son, Tom Harris. The policy number was B 697,465. Plaintiff, Tom's father, was the beneficiary. The accidental death rider provided:

> "The Accidental Death Benefit provided by this supplementary agreement will not be payable if the Insured's death:
>
> ". . .
>
> "2. Results directly or indirectly from any of the following causes:
>
> ". . .
>
> "(c) Suicide or any attempt thereat, while sane or insane;
>
> ". . .
>
> "(f) Voluntary or involuntary
>
> "(i) Asphyxiation from or inhalation of gas except in the course of the Insured's occupation, or
>
> "(ii) Taking of any poison, drug, or sedative . . ."

Tom Harris checked into the Rainbow Motel in Bozeman about 11:30 p.m. on October 10, 1979. He appeared dazed and had difficulty writing his name. The next morning (October 11) Harris paid for another day at the check-in desk and appeared normal to the hotel manager.

Harris was found dead, slumped in the shower of his room with the shower water pouring on him, at about 8:15

a.m. on October 12, 1979. There was about two inches of standing water in the room, and water was running out under the door to the outside.

On March 24, 1980, plaintiff filed a claim with defendant for benefits under the policy which was received by defendant on April 7, 1980. The death certificate accompanying the policy listed the cause of death as "pending results of studies of state lab" because an autopsy had been performed and no conclusive results received. Defendant called a local ex-agent, requesting a certificate showing the cause of death. By this time results had been obtained showing the cause of death to be an overdose of chloroform through inhalation.

On June 11, 1980, defendant sent to plaintiff a check for the benefits due on the basic life insurance policy ($10,775.28, which included a premium refund, post-mortem dividend and paid up additions) with the restrictive endorsement on the back of the check stating, "Accepted in full and final settlement of all claims against American General Life Insurance Company on Policy B 697465." The endorsement appears to be stamped on the back of the check with a blank following the word "Policy" and the policy number was handwritten in the blank.

Defendant denied accidental death benefits because of the policy language set out above and the fact that choloroform is both a gas and a drug and that the Bozeman Police Department concluded that the death was an accidental overdose or suicide.

On August 22 plaintiff (through his attorney) returned the check and demanded that defendant remove the restrictive

-3-

endorsement. The following paragraph was included in the August 22, 1980, letter:

> "We hereby demand that you return to this office the face value of proceeds of the policy without restrictions as to right of Harris to seek balance of double indemnity benefits, together with any accumulation of dividend and interest to date of your payment."

On September 5, 1980, plaintiff filed suit seeking the $10,000 basic benefits, $10,000 accidental death benefits and $50,000 in punitive damages. In a letter dated September 9, defendant mailed the same check back to plaintiff with the restrictive endorsement crossed out and initialed by a respresentative of defendant. Plaintiff then cashed the check on September 16, 1980.

Interrogatories were exchanged and in response to defendant's interrogatory requesting the names of witnesses plaintiff intended to call and what each would testify to, plaintiff listed Kent Lewis (a former agent of defendant) and stated that Lewis would testify regarding the difficulty experienced in obtaining the initial tender of money from defendant. Lewis later testified at trial about defendant's financial condition.

Eight days prior to trial plaintiff furnished defendant with an exhibit showing defendant's assets and liabilities which plaintiff had not listed as an exhibit on the pretrial order. The exhibit was later admitted at trial, over defendant's objection, as plaintiff's exhibit no. 12.

After a jury trial and instruction on punitive damages, the jury returned a verdict on special interrogatories denying the accidental death benefits but finding that defendant had acted in bad faith and awarding $30,000 in

punitive damages. Defendant's motions for judgment notwithstanding the verdict (one of the grounds was plaintiff's failure to prove actual damages) and for a new trial were denied in a memorandum order where the District Court found plaintiff's actual damages to be (1) the interest from the date the claim should have been paid and (2) plaintiff's being forced to pay an attorney to collect the basic benefits.

Defendant appeals from the judgment entered and from the denial of his motions for a new trial and judgment notwithstanding the verdict and presents these issues for our consideration:

1. Was the evidence insufficient to entitle the plaintiff to punitive damages?

2. Did the District Court properly instruct the jury on punitive damages?

3. Did the District Court improperly allow the admission of evidence not listed in the pretrial order?

Regarding the first issue defendant argues that plaintiff failed to prove two things which are required for punitive damages: (1) a violation of the Montana Insurance Code for which a penalty is prescribed, and (2) actual damages. Defendant contends that the first element is required by the following line of cases: Westfall v. Motors Insurance Corporation (1962), 140 Mont. 564, 374 P.2d 96; State ex rel. Larson v. District Court (1967), 149 Mont. 131, 423 P.2d 598; State ex rel. Cashen v. District Court (1971), 157 Mont. 40, 482 P.2d 567; and, First Security Bank of Bozeman v. Goddard (1979), 181 Mont. 407, 593 P.2d 1040. Defendant concludes this aspect of its argument by claiming

that there were no insurance code violations.

With regard to the second element, actual damages, defendant argues that there must be a finding of actual damages before punitive damages may be awarded. Defendant contends there was no evidence of actual damages here because the jury determined that plaintiff was not entitled to the accidental death benefits.

Appellant's arguments are not well taken. First of all, plaintiff showed a violation of the Montana Insurance Code for which a penalty is prescribed. It is uncontroverted here that plaintiff was clearly entitled to the basic life benefits of the policy and that defendant contested liability under tne accidental death rider. Plaintiff filed a claim for benefits on March 24, 1980, and it was not until June 11, 1980, that defendant tendered the check with the restrictive endorsement as noted. Even though plaintiff was a layman, he wisely refused to negotiate the check and it was not until September 9, 1980, that defendant tendered a check that plaintiff could cash without forfeiting his rights under the accidental death portion of the policy. The check was introduced into evidence as plaintiff's exhibit no. 7.

Section 33-18-201(13), MCA, of the Montana Insurance Code provides:

> "Unfair claim settlement practices prohibited. No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> ". . .
>
> "(13) fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insur-

ance policy coverage;"

As indicated by the facts above, appellant violated this statute. The assistant vice-president and manager of life and disability claims testified regarding defendant's general business practice under questioning by plaintiff's attorney as follows:

> "Q. When you sent your check, you indicated that you had stamped on the back a restrictive endorsement that, in effect, says it is payment in full of all claims against the company attributable to the death of Thomas Harris, isn't that correct? A. As is our custom, Mr. Nash.
>
> "Q. And it is your custom when there's liability under one portion, liability to pay, that is liability, for the company to pay on the one portion and a disputed liability under the other portion, to tender the part you agree you have to pay, in full settlement? A. I'm not sure I understand what you're driving at.
>
> "Q. That is your general practice, if there's an agreed portion and a disputed portion to a claim, you tender the agreed portion in full settlement? A. Yes."

That it is the defendant's practice to so endorse settlement checks is underscored by the fact that an examination of the check itself reveals that the endorsement has been stamped thereon with a blank after the word "Policy" with plaintiff's number inserted in handwritten form. This leads one to conclude that other policies are handled in similar fashion.

Moreover, there is a general penalty prescribed for a violation of section 33-18-201(13), MCA. Section 33-1-104, MCA, gives a penalty for each violation of "this code," i.e., the Montana Insurance Code, Title 33 (section 33-1-101, MCA) and section 33-18-201(13), MCA, is clearly in Title 33. This general penalty statute was correctly

addressed and applied by Justice Sheehy in Goddard, supra.

Appellant's next contention on the first issue is that the evidence failed to show actual damages. Here again, we disagree. It is undisputed that the $10,775.28 check with the restrictive endorsement was dated June 11, 1980 (plaintiff's exhibit no. 7). Dividends, a premium refund and paid up additions were calculated to June 11, 1980, by defendant and included in the check. Defendant returned the check without the endorsement accompanying a letter dated September 9, 1980, with the stub stapled to the letter showing the calculations to June 11, 1980 (plaintiff's exhibit no. 11). Defendant did not issue a new check or recalculate the amount due plaintiff to September 9, as demanded by plaintiff and as dictated by sound business practice. Thus, plaintiff lost approximately three months of interest that he would have gained had the insurance company initially tendered the check without the endorsement. It is also uncontroverted that plaintiff hired an attorney to recover benefits under the policy. Plaintiff's counsel on oral argument stated that the premium refund shown by exhibit no. 11 shorted plaintiff $14.11.

We find there was sufficient evidence of actual damages before the Court. To support an award of punitive damages, the actual damages need only be nominal. Butcher v. Petranek (1979), 181 Mont. 358, 593 P.2d 743 ($925 in actual damages--$20,000 in punitive damages upheld on appeal). In Fauver v. Wilkoskie (1949), 123 Mont. 228, 211 P.2d 420, the jury gave the plaintiff no actual damages but awarded $2,500 in punitive damages which was affirmed on appeal. The Court noted that the plaintiff's out-of-pocket

-8-

expenses shown on the record, including attorney fees, were sufficient to uphold the punitive damage award. See also, Lauman v. Lee (1981), ___ Mont. ___, 626 P.2d 830, 38 St.Rep. 499 (the failure of the jury to fix the monetary value as damages does not preclude an award of punitive damages) and Miller v. Fox (1977), 174 Mont. 504, 571 P.2d 804 (an award of punitive damages was affirmed where the trial judge failed to put a value on actual damages).

The second issue raised by appellant focuses on the District Court's Instruction No. 14 which addresses the issue of punitive damages. The pertinent part of the instruction as given appears below:

> "Plaintiff has asked for punitive exemplary damages which may be allowed by you. One who has sustained damage by the oppression, fraud, or malice of another may recover in addition to his actual damages, damages for the sake of example and by way of punishing such other party."

Appellant correctly points out that the above paragraph is nearly identical to the first paragraph of Montana Jury Instruction Guide No. 35, with the exception that the phrase "provided you first find that the plaintiff has suffered actual damage," which appears at the end of the first sentence of MJIG No. 35, was omitted. Appellant argues that Instruction No. 14 is improper because it does not state that the jury must find that defendant violated a provision of the Montana Insurance Code for which a penalty is prescribed before awarding punitive damages and because it fails to require the jury to find actual damages before awarding punitive damages.

Appellant's contention regarding the insufficiency of the instruction on actual damages is disposed of the by the

Fauver case, supra. In Fauver, the Court noted that the trial court instructions did not define damages or instruct the jury as to the elements of damage to be considered by the jury or explain actual damages or compensatory damages or inform the jury how such damages differ from exemplary damages or punitive damages. Yet the Court affirmed the award of punitive damages, reasoning that the record showed that the plaintiff had suffered actual damages. Similarly, here we have found that plaintiff has suffered actual damages and accordingly, we will not reverse the judgment for the failure to include the phrase "provided you first find that the plaintiff has suffered actual damage." Moreover, we note that the given instruction states that plaintiff may recover punitive damages _in addition to his actual damages_ if he can show oppression, fraud or malice. The reasonable conclusion therefrom is that actual damages must first be shown.

We reason similarly with regard to the failure of the District Court to instruct the jury that plaintiff must show a violation of the Montana Insurance Code for which a penalty is prescribed before being awarded punitive damages. In Instruction No. 13 the court read to the jury the statute which defendant violated (section 33-18-201(13), MCA). As discussed earlier, the uncontroverted evidence showed a violation of this statute. We fail to see how the failure to instruct as plaintiff contends warrants a reversal of the judgment.

The third issue relates to the admission of evidence not listed in the pretrial order. Appellant here argues that the plaintiff's exhibit no. 12, indicating the

defendant's assets and liabilities, should not have been admitted because it was not listed in the pretrial order. Also, plaintiff did not indicate in answers to interrogatories that Lewis, a former agent of defendant, would testify about defendant's financial condition.

Appellant was furnished with the exhibit eight days prior to trial and eight days is a sufficient time to prepare rebuttal evidence for the exhibit. Moreover, from the time defendant was served with plaintiff's complaint, defendant was aware of the fact that plaintiff was seeking punitive damages. It requires no recitation of authority that a jury may take into account a defendant's wealth when punitive damages are sought.

Defendant did not request a continuance to prepare for the exhibit, submitted its case to the jury, and after an adverse verdict seeks a retrial on the punitive damages issue. Defendant has had its day in court. We fail to see how defendant's rights were prejudiced by the admission of the exhibit or the testimony regarding defendant's financial condition.

Affirmed.

_____
Chief Justice

We concur:

_____

_____

_____
Justices

-11-

Mr. Justice Frank B. Morrison, Jr., specially concurring.

I concur in the result but dissent from that portion of the opinion which relies upon a violation of the insurance code as the basis for an award of punitive damages.

The jury in this case was permitted to award punitive damages by making a finding that defendant insurance company failed to negotiate in good faith. It is true that the jury was instructed regarding the provisions of section 33-18-201(13), MCA, and that this statute could have formed the basis for their finding in favor of plaintiff and their resulting award of $30,000 in punitive damages. However, the jury was not instructed that a violation of the statute was required for their verdict and in fact they were given the option of simply returning a verdict in favor of plaintiff based upon the "bad faith" case law which has developed.

The majority opinion fails to deal with the question of whether a plaintiff can recover punitive damages in Montana in an action premised upon "bad faith" negotiation without a violation of the insurance code. Instead the majority relies upon the fact that, in this case, there was a violation of the insurance code as a matter of law and, therefore, any error in allowing the jury to return a verdict for plaintiff absent a finding of violation of the insurance code, would be harmless.

I do not agree that there was a violation of the insurance code as a matter of law. The question of whether this insurance company failed to promptly settle claims as a general business practice was a question for the jury.

Prior to our decision in Lipinski v. Flathead Title Co. 39 St.Rep. 2283 a plaintiff's right to recover punitive damages for bad faith arising out of an insurance contract

was not clearly recognized in absence of a statutory violation. However, in <u>Lipinski</u> we said:

> "Should there be any doubt, we now expressly hold that insurance companies have a duty to act in good faith with their insureds, and that this duty exists independent of the insurance contract and independent of statute."

An award of punitive damages without a statutory violation was approved.

In this case the plaintiff presented the evidence from which a jury could find that defendant insurance company engaged in bad faith in its negotiation of this claim. The claim is grounded in tort. Therefore, this jury was entitled to make an award of punitive damages if it found defendant's conduct was sufficiently culpable to satisfy the statutory requirements of oppression and/or implied malice.

I concur in the affirmance.

Justice

Mr. Justice Fred J. Weber dissents as follows:

I respectfully dissent from the majority opinion. My basic disagreement relates to the majority's interpretation of section 33-18-201(13), MCA. In substance I would hold that section does not give rise to an action in tort in the event of a failure to promptly settle a claim with an insured. Reference is made to my dissent in Klaudt v. Flink, ____P.2d____, ____ St.Rep. ____, and which case has Supreme Court No. 82-247.

                                        Justice Fred J. Weber

14

Mr. Justice Daniel J. Shea, concurring:

I would affirm the judgment, but I cannot do so on the ground relied on by the majority. Section 33-18-201(13), MCA, was not intended to create a separate cause of action in favor of the insured where his insurance company has not dealt with him in good faith. Just like our recent decision in Klaudt v. Flink (1983), ____ Mont. ____, ____ P.2d ____, ___ St.Rep. ____ (No. 82-247, decided January 28, 1983), the majority has created a statutory cause of action out of thin air.

The verdict and judgment can, however, be affirmed in any event because there is ample evidence that the insurance company was not acting in good faith with its insured. As indicated by Justice Morrison, we held in Lipinski v. Flathead County Title Co. (1982), ____ Mont. ____, ____ P.2d ____, 39 St.Rep. 2283, a punitive damage award in favor of the insured against an insurance company "exists independent of the insurance contract and independent of statute." Here the insurance company had a clear duty to immediately settle with the insured that part of the claim which was undisputed. A jury could, under these facts, conclude that its failure to do so was in bad faith.

Justice

-15-