No.  91-491

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

CINDY JUEDEMAN, Individually, CINDY JUEDEMAN, Conservatrix of
the Estate of ERICH BURKSTRAND and CHARLES MESSLER,

     Plaintiff and Appellant,

  -vs-

NATIONAL FARMERS UNION PROPERTY AND CASUALTY COMPANY,
an insurance corporation,

     Defendant and Respondent.

FILED

JUN 23 1992

Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Eighth Judicial District,
               In and for the County of Cascade,
               The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Lawrence  A.  Anderson  and  Howard  F.  Strause,
          Attorneys at Law, Great Falls, Montana.

     For Respondent:

          Dennis P. Clarke; Smith, Walsh, Clarke and
          Gregoire, Great Falls, Montana.

                Submitted on Briefs:  January 16, 1992

                         Decided:  June 23, 1992

Filed:

                         Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Plaintiff Cindy Juedeman, mother of Erich Burkstrand, brought suit individually, and as conservator of the estate of Erich Burkstrand against National Farmers Union Property and Casualty Company (Farmers Union) for bad faith under § 33-18-201, which prohibits unfair claims settlement practices. The Eighth Judicial District Court, Cascade County granted summary judgment in favor of the defendant, Farmers Union. Plaintiff appeals. We affirm.

The issues on appeal are restated as follows:

1. Did the District Court properly grant defendant's motion for summary judgment on plaintiff's claim of "leveraging" in violation of § 33-18-201(13), MCA?

2. Did the District Court properly grant defendant's motion for summary judgment on plaintiff's claim for failure to settle in violation of § 33-18-201(6), MCA?

At age eleven, Erich Burkstrand, passenger in a truck involved in a one vehicle accident, was severely injured. The vehicle was driven by Robert Bennyhoff, deceased. Bennyhoff was insured by Farmers Union which provided liability coverage of $100,000 bodily injury per person and $300,000 per occurrence. Farmers Union does not dispute that Burkstrand's bodily injury claim exceeded the $100,000 maximum amount payable under the policy.

I

Did the District Court properly grant defendant's motion for summary judgment on plaintiff's claim of "leveraging" in violation of § 33-18-201(13), MCA?

Plaintiff contends Farmers Union engaged in unfair claims

2

settlement practices by conditioning its $100,000 settlement offer for Erich Burkstrand's bodily injury claim upon Juedeman's agreement to release Bennyhoff's estate from a future claim of loss of consortium. Plaintiff contends this is leveraging and is prohibited under § 33-18-201(13), MCA, which provides:

> No person may, with such frequency as to indicate a general business practice, do any of the following:
> * * * * * * *
> (13) Fail to promptly settle claims, if liability has become reasonably clear, under one portion of the insurance policy coverage in order to influence settlements under other portions of the insurance policy coverage. . . .

Under Rule 56(c), M.R.Civ.P., summary judgment is appropriate where there exists no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Here, we conclude that the trial court properly granted summary judgment in favor of Farmers Union.

Juedeman presented no factual basis supporting her contention that Farmers Union engaged in leveraging. On the contrary, the record shows that Farmers Union was willing to settle for the maximum amount of policy coverage in exchange for a release of all claims which fell under that bodily injury coverage. Since the trial court previously declared that Juedeman's loss of consortium claim arose out of Erich's loss, her claim was limited to Erich's $100,000 bodily injury coverage. While plaintiff does not contest this declaratory ruling, she insists Farmers Union violated § 33-18-201(13), MCA, by conditioning payment of Erich's bodily injury upon a release of Juedeman's individual claim for loss of consortium.

We disagree with plaintiff's interpretation. Leveraging under

3

§ 33-18-201(13), MCA, requires an insurer's manipulation of two coverages. The insurer must withhold prompt settlement of a reasonably clear liability claim under one coverage, in order to influence a claim arising out of another coverage. Here, Erich's bodily injury claim and Juedeman's claim for loss of consortium fall within the same policy coverage. Here, Farmers Union offered to settle both claims falling under that coverage for the maximum amount allowed under the policy. Thus, we hold the court properly found that Farmers Union did not violate § 33-18-201(13), MCA, and properly granted defendant's motion for summary judgment.

## II

Did the District Court properly grant defendant's motion for summary judgment on plaintiff's claim for failure to settle in violation of § 33-18-201(6), MCA?

Next, plaintiff contends Farmers Union failed to make a good faith attempt to effectuate a prompt fair settlement by insisting Juedeman release Bennyhoff's estate. Section 33-18-201(6), MCA, provides:

> No person may, with such frequency as to indicate a general business practice, do any of the following:
> *    *    *    *    *    *    *
> (6) Neglect to attempt in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear. . . .

In this case, plaintiff refused to release Bennyhoff's estate from liability in return for payment of the policy limits. In a letter dated July 16, 1984, plaintiff's attorney Richard Bottomly stated: "We have steadfastly refused to give a full release to any parties in exchange for the payment to Burkstrand, and we will not now do so." This letter demonstrates plaintiff's unwillingness to settle.

4

In substance, this Court has held that without an agreement to release, there is no offer for settlement. Thompson v. State Farm Mutual Automobile Ins. Co. (1973), 161 Mont. 207, 219-220, 505 P.2d 423, 430. Here, the plaintiff's conduct prevented Farmers Union from effectuating a prompt, fair and equitable settlement.

Finally, this Court has previously rejected a claim of insurance bad faith where the plaintiff's conduct caused the delay in payment. Spadaro v. Midland Claims, Inc. (1987), 227 Mont. 445, 451, 453, 740 P.2d 1105, 1109, 1110. Similarly, here, Juedeman's refusal to release Bennyhoff's estate delayed the insurer's payment of claims owing to Erich. Accordingly, the plaintiff has no bad faith claim against Farmers Union.

We hold Farmers Union did not violate § 33-18-201(6), MCA, and the trial court properly granted defendant's motion for summary judgment.

Affirm.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

5

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority.

To understand why I disagree with the conclusions arrived at by the majority, it is necessary that a more complete recitation of the facts be set forth.

Cindy Juedeman is the mother and legal guardian of Erich Burkstrand and Charles Messler.

On September 5, 1983, Erich and Charles were passengers in a vehicle being driven by Robert Bennyhoff when, because of the extremely negligent manner in which the vehicle had been operated, it was driven off the road and was involved in a violent crash.

Bennyhoff was killed as a result of the crash. Erich and Charles were both seriously injured. Erich was so seriously injured that he was permanently paralyzed from the waist down and at all times since the accident has been confined to a wheelchair. His mother is responsible for his care and support.

The defendant in this case admitted that there was no question about Bennyhoff's negligence or liability for the injuries to Erich, Charles, and a third individual who was also a passenger in the Bennyhoff vehicle.

National Farmers Union Property and Casualty Company insured Bennyhoff against liability for the operation of his vehicle. Coverage "A" of that policy required the insurer to pay on behalf of the insured all sums which became due as damages because of bodily injury sustained by any person as a result of Bennyhoff's

6

negligence. The declaration page indicated that the maximum coverage available for injuries to any individual under that policy was $100,000, and that the maximum coverage for each occurrence insured under that policy was $300,000.

In addition, under the same Coverage "A," the policy requires the company to defend any suit alleging bodily injury, even if the allegations of the suit are groundless. However, the policy gives the defendant complete authority to settle any claims made against Bennyhoff if the company deems it expedient. There was no requirement that Bennyhoff approve any settlement.

The defendant in this case admitted that Burkstrand's damages, and the damages incurred by a third passenger in Bennyhoff's vehicle, exceeded the $100,000 of coverage available to each of them. There apparently was some question about whether Messler's damages would have exhausted the remaining $100,000 of coverage available under the policy. In addition, Cindy claimed damages to herself personally as a result of injuries to her son Erich.

On December 15, 1983, Burkstrand's lawyer sent a letter demanding the defendant pay the policy limits that were available to Burkstrand ($100,000). At that time, the defendant and its attorney were aware that Erich had been rendered paraplegic and was confined to a wheelchair; they were aware that his job prospects were significantly reduced; and by that time, a little over three months following the accident, they knew that Erich had incurred medical bills in excess of $40,000. Liability was not contested

7

and the defendant was well aware that Burkstrand's damages exceeded the $100,000 of coverage that was available for him.

Whether or not the defendant responded to that letter is unclear. However, on February 3, 1984, Burkstrand's attorney again wrote to the defendant's attorney and advised him that if the amount of coverage available was paid to his client he would release the defendant from further liability under the policy for Burkstrand's injuries.

The defendant responded that it would pay the policy limits only if it received a release from Cindy of any claim she may have had under the policy, and a release from Erich and Cindy which released the Bennyhoff estate from any further liability for damages to either of them. At that time, Cindy contended that she might be entitled to recovery under Coverage "A" of the policy as a separate person in addition to the maximum amount that was available to Erich as "a person." In other words, it was her contention that if Messler's damages did not amount to $100,000, she was entitled to recover her damages under that part of Coverage "A."

On February 9, 1984, when the defendant responded to the plaintiff's settlement demand it was aware that unless it received a release which included Cindy's claims and fully released the estate, the lawsuit would continue and it would incur the additional defense costs which were a separate obligation under the policy, even though it had paid the amount of coverage available.

8

The parties continued to exchange correspondence through the first half of 1984 in which the plaintiff's attorney demanded unconditional payment of the coverage that was available and the defendant continued to insist on releases for the estate which included Cindy's separate claim. During those exchanges, plaintiff's attorney agreed to waive any claim by Cindy to the amount of coverage that was available to Erich, and to release the estate from any further liability to her son. However, the defendant continued to insist that Cindy relinquish any claim that she might have under Coverage "A" of the insurance policy in exchange for the payment of $100,000. It also continued to insist that she personally release the Bennyhoff estate from any further liability.

Through all of these exchanges, it was the position of defendant's attorney that in addition to its obligation to pay damages and defend the Bennyhoff estate, the defendant had a duty to secure a release for the estate before paying the policy limits available for injuries to Erich. However, there was no such requirement in the policy and the defendant has failed to provide any authority from Montana or any other jurisdiction which would impose such an obligation.

At any rate, the defendant's theory is suspect in light of the fact that on July 23, 1984, after suit was filed, it tendered the full amount of coverage available to Erich into court without any release from Cindy and without any preconditions to the tender.

9

That amount was subsequently distributed by the court to Erich, his attorney, and apparently other creditors who had an interest in it.

I

This is clearly a case where the defendant attempted to resolve Cindy's personal claim against Coverage "A" under its insurance policy by withholding amounts that were undisputedly due to Erich under the same coverage. That is a violation of § 33-18-201(13), MCA, which provides as follows:

> No person may, with such frequency as to indicate a general business practice, do any of the following:
>
> . . . .
>
> (13) fail to promptly settle claims, if liability has become reasonably clear, under one <u>portion</u> of the insurance policy coverage in order to influence settlements under <u>other portions</u> of the insurance policy <u>coverage</u> . . . . [Emphasis added.]

The majority changes the plain language of subsection (13) when it states that:

> The insurer must withhold prompt settlement of a reasonably clear liability claim under <u>one coverage</u>, in order to influence a claim arising out of <u>another coverage</u>. [Emphasis added.]

The majority then goes on to reason that because Erich's claim and Cindy's claim arose under the same coverage that leveraging did not occur under subsection (13). However, subsection (13) prohibits leveraging of a claim "under one <u>portion</u> of the insurance policy coverage in order to influence settlements under other <u>portions</u> of the insurance policy coverage." (Emphasis added.) That is exactly what happened in this case. It was Coverage "A"

10

that provided payment of damages for injury under the Bennyhoff policy. However, because there are at least three, and arguably four, persons who sustained damages as a result of this accident, there were three separate portions available under Coverage "A." The maximum that could be paid under each portion was $100,000. Cindy conceded that she would waive any claim under the portion attributable to Erich's injuries, but contended that she was entitled to payment as a separate person under a different portion of Coverage "A." The insurance company denied payment of the undisputed amount due Erich under his portion because Cindy would not release her separate claim under the other portion. There could never be a clearer example of a violation of the literal terms of subsection (13) than exists in this case.

The majority goes on to reason that because the District Court subsequently issued a declaratory judgment to the effect that Cindy was not a separate person and had no claim under other portions of the policy for damages which were derived from Erich's injury, she was not, therefore, making a separate claim. However, subsection (13) says nothing about the merits of Cindy's claim under the separate portion of the policy. The merits were decided, as they should have been, in the declaratory judgment action. What subsection (13) prohibits is an arbitrary decision by the insurer about the merits of Cindy's separate claim and an effort to impose that arbitrary decision by withholding amounts that are clearly due some other individual like Erich. A clear example of this point is

11

our prior decision in *Harris v. American General Life Insurance Co.* (1983), 202 Mont. 393, 658 P.2d 1089.

In that case, the defendant insurer had issued a $10,000 life insurance policy to the plaintiff's son. An additional $10,000 of coverage was available if the son died by accident. Plaintiff's son died under circumstances that suggested the possibility of suicide.

The defendant sent plaintiff a check for the amount due under the basic policy, but conditioned payment on a release of claims due under the accidental death portion of the policy. Plaintiff filed suit for payment under both portions and for punitive damages. After suit was filed (as in this case) defendant mailed the check back to the plaintiff without the restrictive endorsement. However, after a jury trial a verdict was returned denying recovery under the accidental benefits portion of the policy, but awarding $30,000 in punitive damages to the plaintiff. This Court sustained the punitive damage award under the same § 33-18-201(13), MCA, with which we are concerned in this case. We did so based on the defendant's refusal to pay under an undisputed portion of the policy without a release from liability under the disputed portion. The fact that a jury subsequently found that the defendant had no liability under the disputed portion was not determinative. The controlling facts were that one claim, which was undisputed, was withheld to leverage resolution of another

12

claim that was disputed. That is exactly what happened in this case. The only difference between *Harris* and this case is the personnel who participated in this Court's decision. The author of this decision dissented from the *Harris* decision because of his disagreement that subsection (13) gave rise to an action in tort.

The plain language of § 33-18-201(13), MCA, and our decision in *Harris*, create a cause of action for the plaintiff under the undisputed facts in this case. I would reverse the District Court's order granting summary judgment on the plaintiff's claim of "leveraging" and I would remand this case to the District Court for a trial to determine the merits of that claim.

## II

It is equally clear that the defendant violated the plain language of § 33-18-201(6), MCA, when it refused to pay the limits of coverage available to Erich for over seven months because of his refusal to release the Bennyhoff estate from further liability.

Liability was reasonably clear immediately after defendant completed its investigation of the accident. By December 15, 1983, when demand was first made for payment of the policy limits, the defendant was aware that Erich's damages greatly exceeded the amount of coverage available. It had complete authority under the terms of the policy to pay the amounts of coverage available and there was no obligation in the language of the policy that it

13

obtain a release of its insured in exchange for satisfying its undisputed obligation.

The insurance policy was entered into for the protection of Bennyhoff and his estate, but only to the extent that the terms of the policy provided such protection.

Section 33-18-201(6), MCA, on the other hand, was enacted for the protection of third persons like Erich, and he was entitled to its full protection.

Neither Bennyhoff's insurance policy with the defendant, nor the statutory protection afforded to the plaintiff, provide that proceeds from a liability insurance policy which are undeniably due a third party, can be used to leverage that third party into releasing a tortfeasor from obligations which exceed the amount of coverage he has purchased. However, that is the result arrived at by the majority's erosion of the protection provided for by the legislature.

The majority's opinion depends on its interpretation of the word "settlement" used in subsection (6). The Unfair Trade Practices Act, itself, does not define the term "settlement." However, settlement is defined in Webster's New Collegiate Dictionary 1053 (1979) as "an act of bestowing or giving possession under legal sanction . . . ." If the defendant had an obligation to pay plaintiff pursuant to the terms of its policy with Bennyhoff, settling that obligation clearly should not require

14

obtaining greater protection for Bennyhoff than he was entitled to, based on the amount of coverage he had purchased.

The majority relies on *Thompson v. State Farm Mutual Insurance Co.* (1973), 161 Mont. 207, 505 P.2d 423, for the proposition that settlement requires an agreement to release the settlor. However, using that case as precedent for the result arrived at in this case is an example of lifting language from one context and transposing it to a totally unrelated set of circumstances for a totally different purpose. That case had nothing to do with the issue in this case.

The issue in *Thompson* was whether or not an insurer had damaged its insured by failing to settle a claim against its insured within the policy limits. The evidence was that the third party making the claim against the insured had never offered to release the insured, even if the policy limits had been paid. Therefore, any damage to the insured was not a result of the insurer's failure to settle.

A release was never discussed in *Thompson* in the context of what "settlement" means. A release was only discussed in *Thompson* in the context of whether the defendant's conduct had in fact caused damage to its insured.

The discussion of settlement in that context has no relevance to defining the meaning of settlement under the statutory duty created in this case. Obviously the release was critical to the

15

duty that the insured sought to impose on its insurer in *Thompson*.

A release has nothing to do with the obligation imposed on the insurer to pay amounts of coverage available under § 33-18-201(6), MCA.

The only case cited to this Court by either party which appears to be remotely on point in determining the defendant's obligation in the circumstances is *Wooster v. Midcentury Insurance Co.* (Cal. App. 4 Dist. 1990) 271 Cal. Rptr. 664. For some reason, this case is not even discussed in the majority opinion.

In *Wooster*, the plaintiff alleged that he had purchased an automobile liability insurance policy from the defendant which required that the defendant not only pay damages on his behalf, but also defend him. He alleged that while defending him, his insurance company entered into a settlement agreement to pay the policy limits without obtaining a release of all claims that the third party who had been injured had against him. He contended that this conduct breached the duty of good faith that the insurer was negligent. That claim was dismissed by summary judgment in the trial court and appealed to the California Court of Appeals for the Fourth District. On appeal, it was the plaintiff's contention that his insurer had an obligation to take advantage of the claimant's position of financial distress and use the proceeds available under the insurance policy to extract a release from the claimant which

16

would protect the insured from any further obligations he had to the claimant.

The California Court of Appeals remanded to the trial court because the insurer had failed to keep its insured informed of settlement negotiations which would have allowed the insured to resolve his personal liability at the same time that the insurer's obligations were satisfied. That court held that:

> An insurer's failure to give an insured a chance to participate in negotiating a joint settlement of the policy limits and any amounts in excess of the policy limits which will have to be paid by the insured personally may constitute a breach of a duty owed to the insured.

*Wooster*, 271 Cal. Rptr. 668.

However, more importantly for purposes of this case, that court found when applying an identical provision of California's own Unfair Trade Practices Act, that absence of a release would not excuse an insurer's duty to pay policy proceeds which were indisputably due. In language relevant to this decision, that court stated:

> Contrary to the implications of defendants' concerns in this regard, we have not held that the insurer must withhold either partial or complete payment of policy limits from an injured claimant so as to allow the insured an unlimited amount of time to coerce the claimant into settlement of both the policy limits and in-excess-of-policy-limits amounts. Such a holding would fly in the face of statutory duties imposed upon insurers by the Insurance Code. Although claimants no longer have a private cause of action under Insurance Code section 790.03 *(Moradi-Shalal v. Fireman's Fund Ins. Companies* (1988), 46 Cal.3d 287, 250 Cal. Rptr. 116, 758 P.2d 58), insurers still have a duty, under subdivision (h)(5) of that

17

section, to "attempt[] in good faith to effectuate prompt, fair, and equitable settlements of claims in which liability has become reasonably clear."

Instead we have merely held that an insurer, when it is faced with a claim for amounts over the policy limit, and when it is unable to obtain a general release of its insured even if it pays the policy limits, must let its insured know that it intends to pay the policy limits, or the final portion thereof, and must cooperate with the insured and give the insured a reasonable opportunity to participate in an attempt to make a joint settlement of the claim.

*Wooster*, 271 Cal. Rptr. 673-74.

I agree with the California court that to allow an insurer to withhold payment of policy limits to an injured claimant for the sole purpose of coercing a claimant into settlement of amounts that he may be entitled to over and above the policy limits, violates the spirit and the letter of § 33-18-201(6), MCA. However, that is exactly what the majority has accomplished with its opinion in this case.

Bennyhoff purchased insurance coverage that protected him against claims by Erich in the amount of $100,000. When he did that he assumed personal liability for any damages he might cause Erich in excess of that policy.

When the defendant sold the policy to Bennyhoff it assumed a responsibility under Montana law to pay the amounts due under that policy when liability was reasonably clear. It had no obligation, nor any right under either the policy nor Montana law to withhold those undisputed amounts in order to leverage an injured claimant

18

into settlement or waiver of amounts that might be due from Bennyhoff over and above the policy proceeds.

As a result of this decision, the majority of this Court has again rewritten statutory law so that it accords with its own notions of public policy. Those notions, once again, afford greater protection to wrongdoers than to innocent victims.

For these reasons, I dissent from the opinion of the majority. I would remand this case to the District Court for trial on the merits of plaintiff's claims under §§ 33-18-201(6) and (13), MCA.

_____
Justice

Justice William E. Hunt, Sr., concurs in the foregoing dissent of Justice Trieweiler.

_____
Justice

19

June 23, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


Lawrence A. Anderson, Esq.
Howard F. Strause, Esq.
P.O. Box 2608
Great Falls, MT 59403

Dennis P. Clarke, Esq.
Smith, Walsh, Clarke & Gregoire
P.O. Box 2227
Great Falls, MT 59403-2227

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
    Deputy